ARTEMAS W. DORMAN,

*v.*

GEORGE F. AMES and GILFORD D. GEORGE.

When government land, held by a pre-emptor under the pre-emption law, is flowed with water by reason of a dam erected on a water course before the patent is issued, and subsequently to the issuance of the patent and within two years thereafter, he brings an action for damages on account of such flowage, the certificate of the Register of the land office of the proper district, is competent evidence, under our Statute, to show the filing of the declaratory statement by the pre-emptor upon the land.

The rule of damages in civil actions for nuisance is the injury sustained up to the commencement of the suit.

When it was testified that certain changes were taking place in a meadow alleged to be flowed with water by a dam, evidence, that similar changes were going on in other meadows, would not disprove the fact, that the changes in the meadow flowed were caused by such flowage.

It is not necessary in an action to abate a nuisance, and for damages, that a

person charged with erecting the nuisance should be the owner of the free-hold, or any part of it, upon which the nuisance is erected; it is sufficient if he is a party to the erection of such nuisance, and the disposition subsequently of his interest in the erection constituting the nuisance, will not defeat an action for damages arising from such nuisance erected by him.

Before the objection to a verdict, that it is against the evidence, or not supported by it, can be considered by this Court, it must appear that all the evidence given upon the trial in the Court below is presented in the paper book, and when the paper book does not purport to set forth the whole of the testimony, the Court will presume that evidence sufficient was given to support the verdict.

The Court charged the jury, "If no damages have occurred, or must occur to the plaintiff's premises by reason of the erection of the dam, no action can be maintained for the removal of the dam." *Held*, that this was not error.

The Court also charged, "That as a water course cannot be applied to the most valuable uses without the aid of a dam, every owner has the right to erect such dam, and the question as to the right of action turns upon the nature and extent of the injury, and one which is merely theoretical the law will not notice. *Held*, that the instruction was, that the right of action depends upon whether, or not, the injury is a theoretical one and not whether a substantial injury is nominal, or great, and thus construed is not erroneous.

Certain instructions were given by the Court to the jury, the reasonable import of which was, that although the dam may have caused a flowage of the water of the stream upon the plaintiff's land, he is not entitled to nominal damages, but is only entitled to compensatory damages for such actual injury as the evidence shows him entitled to. *Held*, that this was error; that when any flowage of the land is shown, though without proof of actual damage, the plaintiff is entitled to recover nominal damages for the injury, and the flowage for a day or an hour is sufficient to maintain an action.

The Statute defining a nuisance, and providing an action therefor by which the nuisance may be abated and damage recovered, *Comp. Stat.*, *p.* 596, *sec.* 315, *Gen. Stat.*, *p.* 541, *Sec.* 25, considered; and *Held*, that the flowage of land of one person with water caused by the erection of a dam by another on his own land, or that of a third person, although no actual damage be proved, is within the Statute.

The natural state of a stream is that in which the stream is under the ordinary operation of the physical laws which affect it; it may be different at different seasons of the year, and yet be ordinary by the recurrence of the same condition about the same season every year; it may, ordinarily, be high a portion of the year, low at another portion, and at another it may be at a medium stage,

yet as these are ordinary by reason of their annual or frequent occurrence so that a variance therefrom is an exception, they are the natural condition of the stream.

A riparian owner, in the erection of a dam on his own land, may keep it at such height as to swell the water in the channel of the stream at the ordinary stage of water therein, as above defined, up to his neighbor's line, and is liable for any injury caused by his dam in such rises, or high water, in the stream, as are usual, ordinary and reasonably anticipated at any particular period of the year.

This action was brought in the district court for Hennepin county, in May, 1863, to recover damages for an alleged overflow of plaintiff's land, caused, as is claimed, by a dam erected and maintained by defendants, on their own land; and for an abatement of the dam as a nuisance; issue was joined and the cause brought to trial. The plaintiff's title to the land alleged to have been overflowed was derived from the U. S. by patent, issued July 1, 1861, and in order to show his right to recover damages for injuries sustained prior to that time, plaintiff offered in evidence the certificate of the Register of the U. S. Land Office for the district in which the land is situated, showing that he had filed a declaratory statement upon such land under the pre-emption law, May 3, 1856. This evidence was objected to by defendants, and their objections were sustained by the court, and the plaintiff excepted. At the close of the testimony on the part of the plaintiff, the defendants moved the court for a dismissal of the action, which motion was granted, so far as defendant George was concerned, he claiming and insisting, that there was no competent evidence going to show that he had any interest, or claimed any, in the dam, or the premises whereon it was built, or that he had anything to do with its maintenance. The plaintiff excepted to the ruling of the court in this respect. Various other exceptions were taken to the rulings of the court during the progress of the trial, and to its charge,

and refusals to charge the jury, which so far as material appear in the opinion of the court. The jury found a verdict for defendant Ames. The plaintiff removes the cause to this court by appeal from an order denying a motion for a new trial.

Henry Hinds, for Appellant.

F. R. E. Cornell, for Respondents.

*By the Court*—McMillan, J.  By our statute, "No action for damages occasioned by the erection and maintenance of a mill dam, shall be sustained unless such action is brought within two years after the erection of such dam : *provided*, that such limitation shall not run against or apply to persons living on and holding government land under the pre-emption laws, until a patent for the land damaged or overflowed is issued." *Gen. Stat., Ch.* 31, *Sec.* 17, *page* 241.  The patent was issued July 1st, 1861; the action was brought in May, 1863, but the land was held by the plaintiff under the pre-emption law.  While the statute did not bar the action, yet to entitle the plaintiff to recover damages for injuries prior to the issuance of the patent, it was important for him to show his right to the land under the pre-emption law; to do this it was necessary to show that he had filed the declaratory statement required by the act of Congress, in the proper land office. The statute makes the certificate of the Register of the land office of the district, to any facts in regard to the lands in his district, taken from the books of such land office, *prima facie* evidence of the facts therein stated.  *Gen. Stat., Ch.* 73, *Sec.* 86, *p.* 530.  The certificate of the Register was therefore proper, at least, to show the filing of the declaratory statement by the plaintiff upon the lands described in the certifi-

cate. The second point in the plaintiff's brief, as to the rejection of the transcript of the land office record, showing the entry of land by defendant Ames, was not insisted on by the plaintiff, and need not be further considered. The third point is that the court erred in rejecting the offer of the plaintiff, of testimony to prove damage sustained after the commencement of this action, and up to the time of trial. In this there was no error. The rule of damages in actions of this kind is the injury sustained at the commencement of the suit. 1 *Hilliard on Torts.*, *Ch.* 19, *Section* 16, *page* 656.

The reason of this rule is, that every continuance of a nuisance, is a fresh nuisance, for which an action may be maintained, and if a plaintiff were permitted to recover prospective damages, it would be for a substantive cause of action arising subsequent to the commencement of his suit; in this it differs from trespass, which is a single act. *Beckwith vs. Griswold*, 29 *Barb.*, 293; 1 *Ch. Pl.*, 339, *marg. p*; 1 *Hilliard on Torts.*, *Ch.* 19, *Sec.* 16 a. The fourth point of the plaintiff is, that this evidence having been rejected, it was also error in the court in allowing the defendant to give evidence refuting such damage. The testimony on which this objection is based, is that of a witness Eagan, who testified that he knew Dorman's land; was on it in 1855, and different parts of it more or less every year since, and was on it in 1864, with Dorman. The defendants' counsel then asked him the question, "Did you notice any difference or changes in the land since 1855," to which the plaintiff objected, and the court overruled the objection, to which the plaintiff excepted. The witness answered, "I saw no difference or change in the condition of the meadow since 1855; have been on meadow when dam was in, and when out. Saw no particular change in the sloughs since I first became

acquainted with them—occasionally in high water—and there was no difference in regard to the stage of water to be shown on the face of the meadow." And in answer to a question as to the condition of the meadow in 1864, also objected to by the plaintiff, he answered, "there was no more water on the meadow than before the dam was erected." And in answer to the further question also objected to by the plaintiff, "Is the quantity of grass land on Dorman's land as much now as before the dam was erected?" He answered "Yes, it is, and there is as much plough land." The object of this testimony, manifestly, was to show that the dam had no effect in flowing the plaintiff's land, not to show the plaintiff's damages since the commencement of the action, and for this purpose it was legitimate; the weight it would have is not for our consideration here.

The same witness testified: "In 1855, the meadow produced blue joint, and in higher ground red top; a change has been going on slow, since—now more red top; it wants moist land for blue joint; grass in lower slough not as coarse as it was; no particular change in others." Defendant then asked the witness: "Are similar changes going on in other meadows?" which was objected to by plaintiff, and the objection was overruled by the court, and plaintiff excepted. The witness answered, "There are." This evidence was doubtless offered for the same general purpose as that last considered, and under some circumstances would, perhaps, have been competent, but clearly the fact that changes of this character were going on in other meadows, would not disprove the fact that the changes in the plaintiff's meadow were caused by the overflow of water occasioned by this dam. The objection should have been sustained.

The seventh point is that the Court erred in dismissing the action as to the defendant George. It is not necessary in an

action of this nature, that a person charged with erecting the nuisance should be the owner of the freehold, or any part of it upon which the dam is erected; it is sufficient if he is a party to the erection of the obstruction claimed to be a nuisance. It is urged by the counsel for the respondents, that there is no competent evidence going to show that the defendant George had any interest, or claimed any in the dam, or premises whereon it was built, or that he had anything to do with maintaining it. In this the counsel is mistaken. The plaintiff Dorman in his testimony on the trial says, "The building of the dam was commenced in 1856, and completed in 1857. It is 150 to 175 feet long, and seven feet high, I judge, I never measured it. It was built by the defendants. The dam went off the next spring, and was rebuilt by the defendants. It went off again I think in 1859, and was again rebuilt by defendants. The saw mill and grist mill are on the same quarter section, and were built in 1857, by the defendants, and been occupied by Ames ever since. The dam has been in possession of Ames ever since it was built; George has a machine shop near the dam, run by the water taken from the dam. When the dam went off, George talked to me about how to rebuild it, and he said the dam must be built in a more substantial manner."

John F. Powers a witness for plaintiff says, "In February, 1863, the defendant George told me he had sold out to Ames; since then he has used a machine shop run by the water power from this dam. I know the dam. It was built by the defendants and finished in the fall of 1857; part went out in 1858 or 1859, in the spring, fifty to sixty feet. It was repaired the same summer by the defendants Ames and George. Part of dam, 75 to 80 feet, went out again, and was rebuilt by the defendants. In the fall of 1857, the defendant George told me that he owned two-ninths of the mill site, and Ames

four-ninths, and Florada three-ninths. In February, 1862, George told me he had sold out to Ames. " There is no reason suggested by the defendants' counsel, why this testimony is not competent to show the erection of the dam by the defendant George, and we see no reason why in an action of this kind, it is not competent for that purpose, since the erection of the obstruction is sufficient to constitute a liability, and the disposition of his interest subsequently, if it were established, would not defeat the action for the damages arising from a nuisance erected by him. We think there was evidence sufficient to send the case to the jury as to the defendant George, and it was error under these circumstances to dismiss the action, as to him.

The eighth point made by the plaintiff is that the verdict of the jury is against the law and the evidence, and is not supported by the evidence.

It appears from the paper book, that the case as settled " contains such of the testimony and evidence given on the trial of this cause, and rulings and decisions and instructions of the Court to which exceptions were taken. " Before the objection to a verdict, that it is against the evidence, or not supported by it, can be considered by this Court, it must appear that all the evidence given upon the trial in the court below is presented in the paper book, and when the paper book does not purport to set forth the whole of the testimony, the Court will presume that evidence sufficient was given to support the verdict. This brings us to the consideration of the portions of the charge given by the court below to the jury, and the refusal of the court to charge as requested, to which exceptions were taken by the plaintiff. The Court charged the jury :

"1. If no damages have occurred, or must necessarily occur to the plaintiff's premises by reason of the erection of the

Dorman v. Ames and George.

dam, no action can be maintained for the removal of the dam;" to which the plaintiff excepted. There is no restriction as to the damages here referred to, and as an abstract proposition the charge is entirely correct, and unqualified by any subsequent instruction, is not erroneous. The Court also charged that "As a water course cannot be applied to the most valuable uses without the aid of a dam, every owner has the right to erect such dam, and the question as to the right of action turns upon the nature and extent of the injury, and one which is merely theoretical the law will not notice." There are injuries resulting from the use of a water course, which are recognized as *damna absque injuria;* these are designated as theoretical, or imperceptible injuries. Such for instance as the insensible evaporation and decrease of water by dams, or the occasional increase and decrease of the velocity of the current, and the quantum of water below. *Palmer vs. Mulligan,* opinion of *Kent Ch. J.,* 3 *Caine's Rep.,* 320. We understand the instruction given to be that the right of action depends upon whether the injury in this case is a theoretical injury, and not whether a substantial injury is nominal or great. The instruction is not erroneous.

The Court also charged the jury (1) "If the injuries caused to the plaintiff's land by the dam are only nominal, the Court would have no right to interfere; it would be an injury without damages, and the law would furnish no remedy for the abatement of the dam." The plaintiff's attorney then requested the Court to charge the jury:

(2) "In order to enable the plaintiff to sustain this action, he must show affirmatively, to the satisfaction of the jury, that the erection and maintenance of the dam in question has caused such an overflow of the plaintiff's premises, or backing of water thereon, as to interfere with his comfortable enjoyment thereof, and unless the evidence satisfies the

jury on these points, they must find for the defendant."

The Court added to such request, "But it is enough to sustain the action if the property is injuriously affected," and as so modified charged the jury.

The counsel for the plaintiff requested the Court to charge the jury:

(3) "That the flowage of the water of the stream, by means of the dam, upon the plaintiff's land, is an infringement on his natural rights of property, and is a nuisance;" which the Court refused, and the plaintiff excepted; the Court,. however, gave the same in charge, with the following proviso added thereto, to wit: "Provided his property is injuriously affected thereby," to which the plaintiff excepted.

The plaintiff also requested the Court to charge the jury:

(4) "That the plaintiff has, at all seasons, the right to have the stream flow through his premises, without being set back upon his premises, or impeded in its flow therefrom in any degree," which the Court refused and the plaintiff excepted. The Court at plaintiff's request charged the jury: "that if the dam in question was erected by the defendant, and has caused the water of the stream to set back on the plaintiff's land, he is entitled to recover such damages as the evidence shows him entitled to."

We think the reasonable import of these instructions is, that although the dam may have caused a flowage of the water of the stream upon the plaintiff's land, he is not entitled to nominal damages, but is only entitled to compensatory damages for such actual injury as the evidence shows him entitled to. This we think is erroneous. The owner of land has an absolute title to the soil; it is not a qualified property as in the case of a water course, but a separate and absolute ownership of the land, of which he cannot be deprived, by another, without his consent, nor can any portion of it be

taken for public use without just compensation first paid or secured; and any infringement of his right is an injury for which an action will lie. One man, therefore, has no right to erect a mill dam on his own land, so as to throw the water back and overflow the land of another, without his consent. 1 *Hilliard on Torts*, *Ch.* 20, *Sec's.* 16–17; *Ang. on Water Courses*, *Ch.*, 20 *Sec.* 330; 3 *Blackstone*, 217. And where any flowage is shown, though without proof of any actual damage, the plaintiff is entitled to recover nominal damages for the injury, and flowage for a day or an hour is sufficient to maintain an action. 1 *Hilliard on Torts*, *Ch.* 20, *Sec.* 18. *and authorities cited; McCoy vs. Danley*, 20 *Penn. Rep.* 89–91; *Kemmerer vs. Edelman*, 23 *Penn. Rep.* 143; *Plumleigh vs. Dawson*, 1 *Gil.*, 551, *and authorities cited; Portland Manuf. Co.*, 3 *Sumner*, 189.

It is urged by the counsel for the defendants, that our statute revises the law on the subject of nuisances, and of course must control. By the statute referred to "any thing which is an obstruction to the free use of property, so as to interfere with its comfortable enjoyment, is a nuisance, and the subject of an action; such action may be brought by any person whose property is injuriously affected, &c., and the nuisance may be abated, as well as damages recovered." *Comp. Stat.*, *p.* 596, *sec.* 15; *Gen. Stat.*, *p.* 541, *sec.* 25. A nuisance at common law, in its largest sense, is defined by Blackstone to be anything that worketh hurt, inconvenience or damage. 3 *Bl. Com.*, 215. By Greenleaf a private nuisance is used to embrace only acts injuriously affecting the lands, tenements or hereditaments of an individual. 2 *Greenl. Ev.*, *sec.* 465. In view of these definitions of nuisance, it may be doubted, whether so far as the civil remedy for a private nuisance is concerned, our statute is anything else than declaratory of the common law. But whether or not it would

embrace every cause of action which would exist at common law, we think the case of flowage of land of one person by water, caused by the erection of a dam by another on his own land, or that of a third party, as in the case at bar, although no actual damage be proved, is equally within the statute, and the common law ; the right of the owner extends to the enjoyment of every part of his land, and to flow any part of it with water, is to deprive him of the use of such portion, and is in its nature as much an infringement of his right of property, as if the whole were flowed. But as we have before stated, the right of the owner to his land, and to every portion of it, is absolute, and under the constitution he cannot be deprived of it by any individual without his consent, nor for public use without just compensation first paid or secured, nor can he be deprived of a remedy for any injury thereto.

If, therefore, the statute gives no remedy, and is restrictive of the common law, it must to this extent be in conflict with the constitution and therefore void. But since by our statute, express provision is made by which the owners of mills may obtain the right to flow lands, necessary to the working of mills, by proceeding under the statute, and making the necessary compensation in damages therefor, the inference would seem to be, that except in the manner prescribed in the statute, the right to flowage did not exist, and it is not to be presumed that the statute relied on by the defendants intended to deny a remedy for a wrong recognized by the law. Upon proof of flowage of any portion of plaintiff's land by water, caused by the erection of defendants' dam, although no evidence of actual damages was given, the plaintiff was entitled to recover nominal damages, and as the charge is in conflict with this, it was to such extent erroneous.

The court also charged the jury as follows : "If in ordinary stages of water the dam does not throw the water back on the

plaintiff's land, the defendants are not liable for damages that occur in high stages of water; such an injury is one of that class of injuries that the law provides no remedy (for), but is to be attributed to the act of God;" to which the plaintiff excepted.

The defendants' counsel requested the court to charge the jury as follows: "In determining the question as to whether there has been such a flowage by reason of the dam, as to constitute a nuisance, the jury is not to regard the transient effects of the water in the stream in high water, but the effect of the dam in the usual ordinary stage of water in the stream." And the court so charged the jury, to which the plaintiff excepted.

It is certainly true, as claimed by the respondents' counsel, that a riparian owner may erect a dam across a stream, on his own land, without being liable for consequences casual, remote and uncertain; he is only liable for injuries which are the necessary or proximate consequences or effects of the dam; he is not liable, therefore, for an injury occasioned by any event which is recognized in law as an act of God, although such event, in the absence of the dam, would not have caused the injury. But "an act of God," in legal phraseology, means an accident against which ordinary skill and foresight is not expected to provide; this applied to water courses would include only floods or extraordinary freshets, and not such rises or high water in a stream as is usual and ordinary and reasonably anticipated at particular periods of the year; these with reference to any other class of persons would not for a moment be regarded "acts of God," and we are unable to see how an exception can be made with reference to riparian owners. But it is urged, that the riparian owner may keep his dam at such a height as to swell the water in the channel of the stream, in its *natural* state, up to his

neighbor's line, and he is not answerable for damage done by high water, however it may have been increased by the obstruction below.

This is no doubt true, but the difficulty is in arriving at what is the natural state of the stream and high water. The natural state of the stream is that in which the stream is under the ordinary operation of the physical laws which affect it; this may be different, at different seasons of the year, and yet be ordinary by the recurrence of the same condition about the same season every year; it may ordinarily, be high a portion of the season, and low at another portion, and at another it may be at a medium stage, yet as these are ordinary by reason of their annual or frequent occurrence, so that a variance therefrom is an exception, they are the natural condition of the stream; if, because the stream is low a greater part of the season the dam may throw the water back at that stage to the line of the adjoining owner above, it is manifest that the land of such owner might be overflowed during the balance of the season, or if he may so flow the water back to his own land, at the medium or average stage of water the land of the supra riparian owner may be flowed during the ordinary rises or freshets every year, which would be an intolerable burden and a violation of the maxim *sic utere tuo ut alienum non laedas*. The riparian owner, therefore, in the erection of a dam on his own land, may keep it at such a height as to swell the water in the channel of the stream, at the ordinary stage of water therein, as we have above defined it, up to his neighbor's line, and is liable for any injury caused by his dam in such rises or high water in the stream as are usual, ordinary and reasonably anticipated, at any particular period of the year. We are aware that the authorities cited by the respondents' counsel seem to maintain a different conclusion, particularly the case of *Monongahela Nav. Co. vs.*

*Coon*, 6 *Barr.*, 383. But that case was subsequently examined, reviewed and explained by the Supreme Court of Pennsylvania, in the case of *McCoy vs. Danley*, 20 *Penn.*, *Rep.*, 88, in which the court held, that the owner of a dam, erected on his own land, is responsible for all injury done to the land of his neighbor, arising from the usual and ordinary and expected freshets occurring in the stream. See also *Bell vs. McClintick*, 9 *Watts*, 119 ; *Ang. on Water courses, sec.* 349. Under this rule, the instructions given by the court were too restrictive, as to the liability of the defendants. For the errors indicated, the verdict of the jury must be set aside, and a new trial granted.

The order denying a new trial is reversed, and a new trial granted.