## The Ohio and Mississippi Railway Company

*v.*

### Charles Thillman.

*Filed at Mt. Vernon November 3, 1892.*

1. WATER-COURSE—*obstructing by railroad embankment—duties and liabilities of the company.* A railroad company, in constructing its road over water-courses, must make suitable bridges, culverts, or other provisions for carrying off the water effectually. The duty imposed upon such a company to restore the stream crossed, to its former state, or to so restore it as not to impair its usefulness, exists without such statutory requirement. The same obligation, in such case, rests upon the corporation as upon a private owner who undertakes to interfere with the water-course in the same way.

2. If injury necessarily results to an adjoining land owner from the construction of a railroad crossing over a natural water-course in a skillful and proper manner, he will be entitled to compensation therefor.

3. Such necessary injury constitutes, in a certain sense, the taking of private property, and such property can not be taken without compensation, even though the damage inflicted is the unavoidable result of a public improvement constructed with the highest degree of care and skill.

4. SAME—*obstructing—each continuance a fresh injury.* The duty of a railroad company to so construct and maintain its road across a stream as not to injure adjacent land by throwing water back upon the same, is a continuing one, and every continuance of such nuisance is, in judgment of law, a fresh nuisance and injury. Each overflow upon the land of the adjoining owner, caused by the negligence or want of skill of a railroad company in its mode of constructing or maintaining a bridge or embankment over a running water-course, creates a new

cause of action against the company for injury thereby occasioned to the crops upon such land.

5. Same — *constructing bridge over—degree of care required.* A railroad company whose road is constructed over a water-course is not liable for remote and uncertain consequences, but only for the necessary and proximate results of the structure. It is bound to exercise ordinary care, which is such care as is usually exercised, under like circumstances, by men of ordinary prudence in their own affairs. It is its duty to guard against such floods or freshets as men of ordinary prudence can foresee, but not against such extraordinary floods and accidental casualties as can not reasonably be anticipated.

6. If, in the case of an obstruction of a river or other water-course, such as a bridge, it appears that the injury resulting therefrom to an adjoining owner arose from causes which might have been foreseen, such as ordinary periodical freshets, he whose superstructure is the immediate cause of the mischief is liable for the damages. On the other hand, if the injury is occasioned by an act of providence, which could not have been anticipated, no person can be liable.

7. The degree of care required of a railroad company in constructing a bridge across a water-course is such as to bring to bear such engineering skill as is ordinarily applied to works of that kind, in view of the size and habits of the stream, the character of its channel, and the declivity of the circumjacent territory forming the water-shed.

8. Same — *rights acquired by condemnation proceedings.* Notwithstanding the condemnation of land for a railroad, and the payment of the compensation or damages awarded to the land owner, the company will be liable to him or his grantee for damages resulting from its negligence in the construction, maintenance or operation of its road. Therefore, in an action against a railroad company to recover damages to land by the construction of an embankment across a stream without sufficient openings to let the water pass through the same, it is not error to instruct the jury that it is the duty of a railway company to so construct and maintain its road across streams and natural water-courses as not to inflict injury upon adjacent land.

9. Same — *obstruction — cause of injury — question of fact — nominal damages.* In an action against a railroad company for damages caused by an embankment across a water-course without sufficient openings for the passage of the water, it is a question of fact whether the damage is due to such extraordinary floods as ordinary prudence could have anticipated, or wholly to the defective construction of the embankment, or to both causes. The fact that the embankment is not the sole or even the principal cause of the damage, if it clearly causes some part of the injury, will not defeat the action or justify a verdict for merely nominal damages.

10. In such an action the court, at the request of the plaintiff, instructed the jury that "floods which occur as much as twice in five years are not, in law, such extraordinary floods as will prevent a recovery for damages caused by floods, from the person or persons who, by negligent or unlawful acts, contribute to such overflow." The suit was brought to recover damages for floods, in June, 1885, and June, 1888. There was evidence tending to show that there were extraordinary rainfalls and high water at those dates, but none tending to fix five years as the period within which floods and heavy rains did occur or were likely to occur, or any tending to show that floods did occur or were likely to occur twice in every period of five years: *Held,* that the instruction did not fairly place the matter before the jury, as it virtually assumed that the defendant contributed to the overflows by negligent or unlawful acts, instead of leaving it to the jury to determine whether such was the fact or not.

11. SAME—*rights of riparian owner.* It is the right of each proprietor of land upon a natural water-course to insist that the water shall continue to run as it has been accustomed to do, and to insist that no one shall obstruct or change its course injuriously to him without being liable in damages. As to running streams a riparian proprietor has no right to alter their usual flow in any manner injurious to others above or below him.

12. EMINENT DOMAIN—*resulting injury—presumption of compensation.* Where there is a special remedy provided by statute for fixing the damages to property not taken as well as the value of property taken, necessary injury resulting from a proper performance of its duty by the railroad company will be presumed to have been paid for by the amount awarded in such special proceeding.

13. SAME—*recovering damages in an action of tort.* Where necessary damages to property not taken have been awarded in a condemnation proceeding, or otherwise paid for, they can not afterward be recovered in an action of tort.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. W. H. SNYDER, Judge, presiding.

This is an action on the case begun on May 2, 1889, in the Circuit Court of St. Clair County by the appellee against the appellant company. The trial below resulted in a verdict and judgment for the plaintiff, and said judgment has been affirmed by the Appellate Court, whence it is brought here for review by appeal.

9—143 ILL.

The first count of the declaration avers, that the defendant's road in the town and near the village of Caseyville crossed a natural water-course, through which the water from the adjoining lands was wont to run ; that defendant had constructed and unlawfully maintained a solid earth embankment across said water-course, about 15 feet high, on which the tracks of its railroad were laid, which obstructed the natural flow of said water and forced it back upon the adjoining lands ; that plaintiff was in possession of and cultivating certain land near said water-course, on which were crops of vegetables, corn and wheat ; that on June 20, 1885, a heavy rain storm set in, and a large quantity of rain-water fell upon said adjoining lands, which naturally ran into said water-course, and would have escaped without damage to the plaintiff but for said embankment, but was stopped thereby and prevented from running off in its natural course, and by reason thereof was forced back upon plaintiff's land and flooded and overflowed it, damaging and injuring said crops.    The second count alleges, that the premises cultivated by plaintiff were intersected by the Little Canteen Creek, a natural watercourse which had heretofore flowed through said premises without obstruction ; that on June 16, 1888, defendant unlawfully and wrongfully maintained a solid embankment along the bottom lands and across one branch of said water-course ; that thereby there was prevented a free passage of the water, which, in ordinary floods and freshets, would naturally flow in said water-course ; that on June 16, 1888, a heavy rain-storm set in, as to which the same allegations are made as are set forth in the first count as to the rain-storm of 1885.    The third count alleges, that for four years before April 1, 1889, plaintiff was in possession of and cultivating certain land intersected by a creek, stream and natural water-course, which had many years flowed and still ought to flow without obstruction ; that the defendant negligently, willfully, wrongfully and unlawfully constructed and during all that time maintained said solid

embankment along the bottom land and across a branch of said water-course below plaintiff's lands, thereby penning back and checking the water therein and preventing said water from flowing in its usual course, whereby the same has at various times overflowed said lands. The fourth count was filed by leave after the beginning of the suit and is the same as the third except that the date fixed is September 16, 1889, and the period is the five years prior thereto. The pleas are the general issue, and former recovery by plaintiff's landlord.

The evidence tends to show, that Little Canteen creek flows through Caseyville westward and then divides into two channels, one going north and the other south; that the railroad track of appellant passes over the south branch; that, from 1858 to 1868 or 1870, there was a trestle some 50 or 60 feet long and from 12 to 14 feet high, under the railroad, through which the water in the south branch of the creek passed on south into a lake; that between 1868 and 1870 the railroad company filled up the trestle so as to form an embankment.

Messrs. Pollard & Werner, for the appellant:

Each instruction given for the plaintiff was erroneous. What is or is not an extraordinary flood is a question for the jury. Gould on Waters, sec. 211.

Messrs. Turner & Holder, for the appellee:

It is the continuing duty of a railroad company to so construct and maintain its bridges, trestles and culverts across the streams and natural water-courses as to inflict no injury upon adjacent land owners, and each overflow caused by its negligence or unskillfulness in that behalf is an independent cause of action. *Railroad Co.* v. *Cox*, 91 Ill. 502; Pierce on Railroads, 202; *Railway Co.* v. *Chapman*, 39 Ark. 463; *Railroad Co.* v. *Hays*, 11 Lea, 382; *Railway Co.* v. *Wachter*, 23 Ill. App. 415; 123 Ill. 440; *Drake* v. *Railway Co.* 63 Iowa, 302; *Railway Co.* v. *Nelson*, 59 Texas, 125; *Railroad Co.* v.

*Benson,* 75 Mo. 504; *Railway Co.* v. *Singletary,* 34 Ill. App. 425; *Railway Co.* v. *Elliott,* id. 589.

The argument of counsel as to the third instruction is decidedly unsound.   The jury was told that as a matter of law "floods which occur as often as twice in five years are not such extraordinary floods as will prevent a recovery for damages caused by such floods, from the person or persons who, by negligent or unlawful acts, contribute to such overflows." This instruction correctly states the law.   Gould on Waters, 211; *Mayor* v. *Bailey,* 2 Den. 433; *Carriger* v. *Railway Co.* 7 Lea, 388; *Gray* v. *Harris,* 107 Mass. 492.

Mr. Justice Magruder delivered the opinion of the Court:

The only errors, to which our attention is called, are those alleged to have been committed by the giving of three instructions for the plaintiff.   The first two of these instructions are as follows:

"The court instructs the jury, that it is the duty of a railroad company so to construct and maintain its road across streams and natural water-courses which it intersects as to inflict no injury upon adjacent lands."

"The court further instructs the jury, that this duty is a continuing one, and that each overflow caused by the negligence or want of skill of the company creates a new cause of action for damages to the crops or other property of the rightful possessor of the lands overflowed, although the plaintiff acquired his interest after the creation of the obstruction; and if the jury believe, from the evidence, that a portion of the water of the Little Canteen creek naturally flowed south across the right of way of defendant prior to the filling up of the trestle, and would still continue to do so excepting for the obstruction of the embankment complained of, then they must find for the plaintiff, giving such damages as the jury can say, from the evidence, that he has sustained, if they further believe from the evidence that he has sustained damage by rea-

son of said embankment and partial obstruction of the flow of the water as aforesaid."

If we understand the objection of counsel to the first of these instructions, it is that the language is too broad in stating it to be the duty of the railroad company to so construct and maintain its road across streams and natural water-courses, which it intersects, as to inflict *no* injury upon adjacent lands. It is said, that, when the company has brought to the work of building its structure across such a water-course a high degree of engineering skill, it is not responsible for such injury as *necessarily* results from the improvement.

It is settled by all the authorities, that it is the right of each proprietor of land upon a natural water-course to insist, that the water shall continue to run as it has been accustomed to do, and to insist that no one shall obstruct or change its course injuriously to him without being liable in damages. As to running streams, a riparian proprietor has no right to alter their usual flow in any manner injurious to others above or below him.    (*L. R. and F. S. R'y Co.* v. *Chapman,* 39 Ark. 463).    As an individual has no right, in the improvement of his own land to turn a stream of water upon the land of another, so has not a corporation such right under its charter. (*T. W. & W. R'y Co.* v. *Morrison,* 71 Ill. 616).    A railroad company in constructing its road over water-courses must make suitable bridges, culverts or other provision for carrying off the water effectually.    (Angell on Water-courses—7 ed.— sec. 465 b.).    The duty imposed by statute upon such company to restore the stream crossed to its former state, or to so restore it as not to impair its usefulness, exists also in the absence of express statutory requirement.    (Pierce on Railroads, page 203).    The same obligation in such case rests upon the corporation as rests upon a private owner, who undertakes to interfere with the water-course in the same way.    (*The C. R. I. & P. R. R. Co.* v. *Moffitt,* 75 Ill. 524).    In *J. N. W. & S. E. R. R. Co.* v. *Cox,* 91 Ill. 500, we said:    "The railroad

company had no right to stop by its embankment the natural and customary flow of the water. * * * When it undertook to divert and change the usual and customary flow of the water, it was bound to provide sufficient means to carry it away from the farm of appellee upon which it had caused it to accumulate."

In the present case, the proof does not show whether the appellant owns an easement at the point where the obstruction is alleged to exist, or whether it owns the fee, or whether it made the crossing under special legislative authority, or whether it acquired its right by condemnation or by purchase. If, where a railroad company constructs a crossing over a natural water-course in a skillful and proper manner, injury necessarily results to the adjoining land owner, he is entitled to compensation therefor. Such necessary injury constitutes in a certain sense the taking of property; and a man's property can not be taken without compensation, even though the damage inflicted is the unavoidable result of a public improvement constructed with the highest degree of care and skill. In *T. W. & W. Ry. Co.* v. *Morrison, supra,* the refusal of the following instruction was held not to be error: "The law is, that when a railroad company builds its railroad in a proper and skillful manner and the owner of adjacent land is injured thereby, he can not recover damages for such injury; he can only recover where his injury results from the unskillful or negligent manner of building the road." There, the case of *Nevins* v. *City of Peoria,* 41 Ill. 502, was approved. In the latter case, the constitutional guaranty, that private property should not be taken for public use without just compensation was held to apply to the act of a city in diverting the natural flow of water and turning it upon the premises of a private owner, while the city was engaged in grading and draining one of its streets. In the *Morrison* case, the railroad company, sued for damages, was built before the adoption of the constitution of 1870, which allows compensation for property

damaged, as well as property taken. Where there is a special remedy provided by statute for fixing the damages to property not taken as well as the value of property taken, necessary injury resulting from a proper performance of its duty by the railroad company will be presumed to have been paid for by the amount awarded in such special proceeding. (Pierce on Railroads, 203).

In the case at bar there is no plea of the statute of limitations.

The proof tends to show, that the structure across the water-course was built before 1870, and that the opening by means of the trestle was closed up before that date or about that date. It does not appear, that necessary damages resulting from a proper construction of the crossing have been awarded or paid for. Where such necessary damages have been awarded in a condemnation proceeding or otherwise paid for, they cannot be afterwards recovered in an action of tort. (*O. & M. Ry. Co.* v. *Wachter*, 123 Ill. 440.) Here, the instruction means, of course, that the company must so construct its road as to inflict no injury which it is not liable to pay for, and if it is broad enough to include such necessary injury as is involved in a proper construction of the crossing, we cannot say under the proofs that compensation was ever made for such necessary injury.

It is impossible, however, that the jury could have understood this instruction to refer to the damage, which a skillful construction of the crossing over the water-course unavoidably involved. The suit was brought to recover for damages resulting from an improper construction of the road at this point. Notwithstanding the condemnation of land for a railroad and the payment of the compensation or damages awarded the land-owner, the company will be liable to him or his grantee for damages resulting from its negligence in the construction, maintenance or operation of its road. (*O. & M. Ry. Co.* v. *Wachter, supra.*) The first instruction must be read

in connection with the language of the second instruction, and with the allegations of .the declaration, and with the proofs in the case, which all show that it was sought to hold the company liable for the injury resulting from the negligent and defective construction and maintenance of an embankment without culverts or openings. The instruction could have conveyed no other meaning than that it was the duty of the company so to construct and maintain its road as to inflict no injury that could have been avoided by proper care and skill, or in other words by making sufficient openings for the passage of the water southward. We are of the opinion, that the defendant has no good reason to complain of the giving of the first instruction, construed as it must be with reference to the special facts of this case. (*L. & N. R. R. Co.* v. *Hays,* 11 Lea, (Tenn.) 382; *Nevins* v. *City of Peoria,* 41 Ill. 502; *Gillham* v. *Madison Co. R. R. Co.* 49 id. 484; *Robinson* v. *N. Y. & E. R. R. Co.* 27 Barb. 512; *Cott* v. *Lewistown R. R. Co.* 36 N. Y. 214; *March* v. *P. & C. R. R.* 19 N. H. 372; *Johnson* v. *A. & St. L. R. R. Co.* 35 id. 569; *Eaton* v. *B. C. & R. R. R.* 51 id. 504; *Hatch* v. *Vt. Cen. R. R. Co.* 25 Vt. 49.)

We see no objection to the second instruction. It announces the doctrine that the duty of the railroad in this regard is a continuing one, and that every continuance of a nuisance is, in judgment of law, a fresh nuisance. Each overflow upon the land of an adjoining owner, caused by the negligence or want of skill of a railroad company in its mode of constructing or maintaining a bridge or embankment over a running watercourse, creates a new cause of action against the company for injury thereby occasioned to the crops upon such land. (*C. R. I. & P. R. R. Co.* v. *Moffitt,* 75 Ill. 524; *Groff* v. *Ankenbrandt,* 124 id. 51; *C. B. & Q. R. R. Co.* v. *Schaffer,* id. 124; *Drake* v. *C. R. I. & P. R'y. Co.* 63 Iowa, 302; *Dorman* v. *Ames,* 12 Minn. 451.)

The third instruction given for the plaintiff was as follows: "The court instructs the jury that floods, which occur as much

as twice in five years, are not in law such extraordinary floods as will prevent a recovery for damages caused by floods from the person or persons who by negligent or unlawful acts contribute to such overflows." We are inclined to think that this instruction was erroneous, and was calculated to mislead the jury. What was an extraordinary flood was a question of fact to be determined by the jury from the evidence under proper instructions from the court. (*H. & G. N. R. R. Co.* v. *Parker*, 50 Tex. 330; *Gray* v. *Harris*, 107 Mass. 492). The suit was brought to recover damages for floods occurring in June, 1885, and June, 1888; and there was evidence tending to show that there were extraordinary rain-falls and high water at those dates, but none tending to fix five years as the period within which floods and heavy rains did occur or were likely to occur, nor any tending to show that floods did occur or were likely to occur twice in every period of five years. "Freshets are regarded as ordinary which are well known to occur in the stream occasionally through a period of years although at no regular intervals." (Gould on Waters, sec. 211c—2 ed.) "If, in the case of an obstruction of a public river, it appears that the injury resulting therefrom arose from causes which might have been foreseen, such as ordinary periodical freshets, he, whose superstructure is the immediate cause of the mischief, is liable for the damage. On the other hand, if the injury is occasioned by an act of providence, which could not have been anticipated, no person can be liable." (Angell on Watercourses—7 ed.—sec. 349). In regard to the degree of care to be used by a railroad company in constructing a bridge across a water way, it may be said, that there should be brought to bear such engineering skill, as is ordinarily applied to works of that kind "in view of the size and habits of the stream, the character of its channel and the declivity of the circumjacent territory forming the water-shed." (*Ill. Cen. R. R. Co.* v. *Bethel*, 11 Brad. 17). The company is not liable for remote and uncertain conse-

quences, but only for the necessary and proximate effects of the structure. (*Dorman* v. *Ames*, 12 Minn. 451). It is bound to exercise ordinary care, which is such care as is usually exercised under like circumstances by men of ordinary prudence in their own affairs. · In the exercise of ordinary care, it is its duty to guard against such floods or freshets as men of ordinary prudence can foresee, but not against such extraordinary floods and accidental casualties, as could not reasonably be anticipated. (*C. & N. W. Ry. Co.* v. *Hoag*, 90 Ill. 339; *H. & G. N. R. R. Co.* v. *Parker, supra*). The law is correctly stated in *Gray* v. *Harris, supra*, in the following language: "The degree of care, which a party is bound to use in constructing a dam across a stream, * * * must be in proportion to the extent of the injury, which will be likely to result to third persons provided it should prove insufficient; and it is not enough that the dam ·is sufficient to resist ordinary floods; for, if the stream is occasionally subject to great freshets, those must likewise be guarded against; and the measure of care required in such case must be that which a discreet person would use if the whole risk were his own. * * * The dam should be sufficient to resist not merely ordinary freshets, but such extraordinary floods as may be reasonably anticipated." (*O. & M. Ry. Co.* v. *Ramey*, 139 Ill. 9). Whether the flood causing the injury is such an one, as should have been anticipated and provided against, is a question which should be left to the jury to decide.

Gould in his treatise on Waters (sec. 211c—2 ed.) says: "the fact that the defendant's dam is not the sole, or even the principal, cause of the damage, if it clearly causes some part of the damage, would not defeat the action, or justify a verdict for merely nominal damages." (*Washburn* v. *Gilman*, 64 Me. 163; *C. & N. W. Ry. Co.* v. *Hoag*, 90 Ill. 339). It was a question of fact for the jury, whether the damage caused in the present case was due wholly to such extraordinary floods as ordinary prudence could not have anticipated, or wholly to

the defective construction of the embankment by the defendant, or to both causes. The manner, in which the third instruction placed this matter before the jury, was unfair to the defendant, because the instruction virtually assumes that the company contributed to the overflows by negligent or unlawful acts, instead of leaving it to the jury to determine whether such was the fact or not. For the error in giving the third instruction, the judgment is reversed and the cause is remanded to the Circuit Court.

*Judgment reversed.*