𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

| 105 | 343 |
| s108 | 365 |

American Locomotive Company and Another *v.* Hoffman.

June 14, 1906.

1. Appeal and Error—*Errors not Assigned in Petition—Reply Brief.*— Errors assigned for the first time in the reply brief of the plaintiff in error will not be considered by this court. The petition for the writ of error is in the nature of a pleading, and should set forth plainly the errors relied on for reversal. A suggestion in the petition that other errors are to be assigned is ineffectual to reserve the right to assign errors in a reply brief.

2. Waters and Water Courses—*Obstructing Flow—Duty of Lower Proprietor—Extraordinary Floods.*—A lower riparian owner has no right to pen back or obstruct the flow of a water course so as to flood the lands of the upper owners. Where bridges, culverts and the like are constructed across water courses by a lower proprietor due care should be taken not to obstruct the natural flow, including such rises as are usual and ordinary and reasonably to be anticipated at certain seasons of the year. But a lower proprietor is not bound to take precautions against extraordinary freshets which human sagacity cannot foresee nor human experience foretell, nor against the breaking of dams in which he has no interest and over which he has no control. In the case at bar the instructions of the trial court required of the lower owner a higher degree of care than the law imposes.

Error to a judgment of the Circuit Court of Henrico county in an action of trespass on the case. Judgment for the plaintiff. Defendants assign error.

*Reversed.*

The opinion states the case.

*McGuire & Riely* and *Wyndham R. Meredith,* for the plaintiffs in error.

*Conway R. Sands* and *John A. Lamb,* for the defendant in error.

Cardwell, J., delivered the opinion of the court.

This is a writ of error to a judgment of the Circuit Court of Henrico county in favor of the defendant in error against the plaintiffs in error for damages alleged to have been caused by the insufficiency of two culverts constructed by plaintiffs in error upon their property.

Plaintiff in error, the American Locomotive Company, successor in title to the Richmond Locomotive Works, is owner of a parcel of land in Henrico county, near the limits of the city of Richmond, on which is located the various shops of the company, and through this parcel of land runs Cannon's branch, a small stream, which, under ordinary conditions, is only from one to six inches deep. This branch, it appears, drains an area of 735 acres, part of which is very flat and part quite precipitous, and nearly all farming property.

The defendant in error is the owner of a lot of land north of the land and works of the plaintiffs in error. The old mill road, or valley road, running practically east and west, divides the property of plaintiffs in error from the property of defendant in error, and Cannon's branch, which has its source in the northwestern portion of Henrico county and drains that section as well as Highland Park, Chestnut Hill and Barton Heights, suburbs of the city of Richmond, flows by the property of defendant in error, across the old mill road and through the property of plaintiffs in error into Shockoe creek, which empties into James river.

Defendant in error, about ten years ago, built a store and dwelling upon his property, and placed on the west side thereof, next to Cannon's branch, a four-foot wall for the protection of his property from this stream; and subsequently, for their own convenience, plaintiffs in error placed in Cannon's branch, where the same flows through their property, a culvert three feet in diameter, and later placed in said branch another culvert four feet in diameter. They also placed across the branch, along the northern boundary of their property and along the south side of the old mill road, a fence of oak boards, placed perpendicularly about an inch apart and nailed to pieces which were attached to cedar posts. Through this fence trash could not pass, and at the bottom of the fence was placed an iron water gate, which was suspended across Cannon's branch upon an iron rod. The culverts spoken of are about 468 feet long, running underground and carrying the water across the plant of plaintiffs in error, curving just before reaching the outlet, so as to empty into what is known as Bacon Quarter branch, which stream flows into Shockoe creek.

This suit was instituted for the purpose of recovering damages for four overflows of defendant in error's property prior to and including the ———— day of October, 1904. The declaration contains eight counts charging the plaintiffs in error with building culverts which were improperly constructed and inadequate to carry off the water which they had reasonable cause to believe would flow down Cannon's branch; and also that plaintiffs in error built across Cannon's branch a fence with a water gate attached thereto, which was improperly built and obstructed the flow of water in Cannon's branch, backing the same on the property of defendant in error.

In the petition for the writ of error there are but two errors assigned—first, that the verdict is contrary to the evidence; and, second, because of error in instruction No. 1 given by the court.

But in the reply brief filed by counsel for plaintiffs in error a number of assignments of error are made and argued.

Counsel for defendant in error makes the point that the assignments made in the reply brief should not be considered by the court, and in this view we concur.

Section 3464 of the Code provides that "a petition for an appeal, writ of error or supersedeas shall assign errors; . . ." and in the opinion by Buchanan, J., in *Orr* v. *Pennington,* 93 Va. 268, 24 S. E. 928, it is said: "The petition required is in the nature of a pleading and should state the case which the party applying for the appeal wishes to make in the appellate court. It ought to assign clearly and distinctly all the errors relied on for a reversal of the case, so that the opposite party may know what questions are to be raised in the appellate court, and not have new questions sprung upon him at or just before the hearing of the cause, when there may not be sufficient time or opportunity for meeting them."

The mere intimation or even declaration in a petition for an appeal or writ of error that there are other objections to the rulings of the trial court does not reserve to the petitioner the right to assign errors in the brief filed in his behalf in reply to the brief filed for the opposing party.

In *Railway & Elec. Co.* v. *Bickford, ante,* p. 182, 52 S. E. 1011, it was held that errors suggested in the brief filed by plaintiff in error after the brief for defendant in error was filed could not be considered. See also *Railroad Co.* v. *Perrow,* 101 Va. 345, 43 S. E. 614; *Hawpe* v. *Bumgardner,* 103 Va. 91, 48 S. E. 554.

Coming, then, to the assignments of error made in the petition in this cause, we will consider first the objection made to instruction No. 1, given for the defendant in error.

The instruction is as follows: "The court instructs the jury that it was the duty of the defendants in building their fence

and water gate across and constructing their culverts in Cannon's branch to so build said fence and water gate and construct said culverts as not to obstruct such extraordinary flows of water as the defendants might reasonably have expected would occasionally flow down Cannon's branch. And if the jury believe from the evidence that the flow of water in Cannon branch, on the occasions complained of in the declaration, were not greater than that which the defendants might have reasonably expected would flow down said Cannon's branch on such extraordinary occasions, then it was the duty of the defendants to have anticipated such flows of water, and to have so built said fence and water gate and constructed said culverts that neither said fence and water gate nor said culverts would, under such circumstances, have caused the water to back upon the plaintiff's property. And if the jury believe from the evidence that the defendants failed to so build said fence and water gate, or construct said culverts, and as a consequence thereof, the plaintiff was injured, then the defendants are liable to the plaintiff.

"But the jury are further instructed that the defendants are not responsible for damage occasioned by great and sudden visitations of wind and water, whose occurrence cannot be anticipated, and whose devastating force cannot be guarded against by exercise of ordinary foresight, care and skill; and if the jury believe from the evidence that the plaintiff's damages arose from such causes, even though they may believe that the culverts and fence in question were insufficient, they must find for the defendants."

The precise objection is that the instruction uses the words, "so build said fence and water gate and construct said culverts as not to obstruct such extraordinary flows of water as the defendants might reasonably have expected would occasionally flow down Cannon's branch." In other words, that this lan-

guage in the instruction imposed upon the plaintiffs in error a higher degree of care and foresight in the construction of the culverts and building of the fence and water gate in question than the law imposes.

This instruction, when read in connection with the other instructions given by the court, especially instruction No. 3, was, we think, very plainly misleading. Instruction No. 3 told the jury that "if the damage complained of was caused by a volume of water in Cannon's branch so great that no reasonably prudent man would have been expected to foresee it, whether the volume was caused by rainfall or by the breaking of one or more dams or road beds acting as dams, they must find for the defendants, no matter whether the jury believe that the culverts and fence and water gate were defective or not." By this instruction the jury should have understood that if the damage complained of was caused by a volume of water in Cannon's branch, caused by an extraordinary rainfall or by the breaking of one or more dams or road beds acting as dams, these were causes which a reasonably prudent man would not have been expected to foresee; and yet might have understood from the language referred to in instruction No. 1 that it was the duty of plaintiffs in error to have used such care and caution in constructing the culverts, etc., in question as not to obstruct the extraordinary flows of water caused in the manner indicated in instruction No. 3—that is to say, instruction No. 1, as it appears to us, required of the plaintiffs in error extraordinary care and foresight in constructing the culverts, etc., in question, instead of reasonable care as properly indicated in instruction No. 3. The degree of care thus put upon plaintiffs in error in instruction No. 1 is greater than the degree of care which defendant in error's declaration alleged—namely, ordinary and reasonable care. Instruction No. 1 required of plaintiffs in error that they not only be prepared for the natural flow of

water in Cannon's branch, including such increase therein as might reasonably be expected to occur in times of freshet, but to be prepared for an unusual and exceptional flow of water caused by the breaking of one or more dams, or road beds acting as dams, which, as we have said, is wholly inconsistent with the degree of care imposed by instruction No. 3.

. There was evidence tending to show that one of the overflows of defendant in error's property complained of occurred on the 11th day of June, 1903, by reason of the unusual rainfall and the breaking of a dam and the outpour of a reservoir of water into Cannon's branch; and the language used in instruction No. 1 clearly means, and could have been construed by the jury as meaning only, in the light of these facts, that plaintiffs in error were liable for the damage caused by the extraordinary flow of water which occurred on the 11th of June, 1903. The instruction, therefore, is, we think, plainly misleading; and the question remaining for consideration is, does it state correctly the law as to the liability of plaintiffs in error in this action?

The question involved in the instruction has not been passed upon directly by this court, but its previous decisions of kindred questions are not at all out of harmony with the decisions of the United States Supreme Court and the courts of a large number of the States, where the question has been considered and passed upon directly. The result of these decisions is well stated at pp. 374-6, 30 Am. & Eng. Ency. L. (2d ed.), as follows:

"As a general rule the upper riparian owner has, as against the lower riparian owner, the right to have the water course flow from his land according to nature, and a lower owner has no right to pen back or obstruct the flow of the water so as to flood the lands of the upper owners, or by raising the level of the water in the channel interfere with the drainage of the

upper land, or to subtract from the water power of the upper owner. . . . Where bridges, culverts, etc., are constructed across water courses by railroad companies, municipalities, or other corporations, or by individuals, due care must be taken not to obstruct the natural flow, including that at seasons of either low or usual high water, and the failure to do so will render the offender liable for injuries to landowners caused by the penning back of the waters and the overflow of their lands; but such structures need not be constructed in such a manner as to permit the unobstructed flow of the water course in times of unprecedented and extraordinary freshets."

The numerous cases and text writers cited in the foot notes, as far as we have been able to examine them, fully sustain the statement of the law just quoted.

In *Gleason* v. *Va. Mid. Ry.,* 140 U. S. 435, 11 Sup. Ct. 859, 35 L. Ed. 458, the rule is stated as follows: "Extraordinary floods, storms of unusual violence, sudden tempests, severe frosts, great droughts, lightning, earthquakes, sudden death and illness have been held to be 'acts of God.' . . . In *Dorman* v. *Ames,* 12 Minn. 451, it was held that a man is negligent if he failed to take precautions against such rises of high water as are usual and ordinarily and reasonably to be anticipated at certain seasons of the year; and we think the same principle applies to this case." In other words, it was there held that a person or corporation would be considered as negligent if he failed to take precautions against such rises of high water as are usual and ordinary and reasonably to be anticipated at certain seasons of the year, but would not be if he failed to take precautions against extraordinary floods, etc., which were unusual and not reasonably to be anticipated.

Gould, in his work on Waters, section 258, citing a great many decisions as authority for the statement, says that a railroad company (and, of course, the same would apply to any

other corporation or an individual) is not liable in damages for failure to construct a culvert or bridge so as to pass extraordinary floods.

At p. 1091, 5 Cyc., with respect to the interference with the flow of waters, it is said: "If a municipality construct a bridge in such manner as to divert the stream from its natural course, or cause it to set back, or, in certain instances, overflow upon an adjoining landowner, it is liable in damages for the injuries thus sustained, unless the flood or freshet causing the injury be an extraordinary one, in which case the rule would be otherwise."

The liability for damages in such cases is because of the negligence of the party interfering with the natural flow of the stream, and in 2 Shear. & Red. on Neg., sec. 728, discussing the degree of duty in such cases, it is said: "He is guilty of negligence if he fails to anticipate and provide security against the ordinary changes of temperature, floods, etc., to which the country is subject; but he is not liable for the consequences of natural events, which are of such rare occurrence that he could not reasonably anticipate them." The same authors, continuing the discussion, in sec. 732 of the same volume of their excellent work, say that "no more than ordinary care is required."

This rule of law is sanctioned in *Sabine* v. *Johnson*, 35 Wis. 185, where it is held that there would be liability for a failure to provide security against "ordinary periodical freshets, which can be foreseen with reasonable certainty," but that there would be exemption from responsibility for "those unusual and extraordinary freshets which human sagacity cannot foresee nor experience foretell."

To the same effect are the cases of *Emery* v. *Railroad Co.*, 102 N. C. 209, 9 S. E. 139, 11 Am. St. Rep. 727; *Sullens* v. *Ry. Co.*, 74 Iowa 659, 38 N. W. 545, 7 Am. St. Rep. 501;

*Ohio, &c., Ry. Co.* v. *Thillman,* 143 Ill. 127, 32 N. E. 529, 36 Am. St. Rep. 359.

In *N. & W. R. Co.* v. *Marshall,* 90 Va. 836, 20 S. E. 823, the conditions surrounding the accident were "extraordinary." A culvert of the railroad company was sufficient for all ordinary conditions, but was inadequate to carry off a great fall of rain amounting to a water spout, as a result of which a fill was washed out and a passenger train fell through the breach thus made, killing the plaintiff. *Held:* that the company was not liable, the accident being unavoidable.

Elliott, in his work on Railroads, Vol. 4, sec. 1584, citing among others the case of *N. & W. R. Co.* v. *Marshall, supra,* says: "It is obvious that where an injury to a passenger is caused by extraordinary floods, tempests, storms, or the like, there is no liability on the part of the carrier."

We are cited by counsel for defendant in error to a number of cases dealing with the question of liability where a mill dam or other obstruction is erected across a stream, or been maintained in an unsafe condition; but they do not meet the conditions in this case, and merely sustain the rule approved in *Railway Co.* v. *Ramey,* 139 Ill. 9, 28 N. E. 1087, 32 Am. St. Rep. 176, and deduced from the opinion in *Mayor, &c.,* v. *Bailey,* 2 Denio (N. Y.) 433, viz: "It is not enough that the dam is sufficient to resist ordinary floods, for if the stream is occasionally subject to great freshets, those must likewise be guarded against, and the measure of care required in such cases must be that which a discreet person would use if the whole were his own."

We are not at all disposed to question the correctness of this rule as applied to the case in which it had its origin or to those in which it has been repeatedly sanctioned, but we find nothing in those cases, or the rule, that sustains the contention that the culverts in question here should have been constructed so as

to provide defendant in error security, not·only against such overflows of his property as ordinarily occurred from natural causes prior to the construction of the culverts, but those caused by the breaking of a reservoir or dam, over which plaintiffs in error had no control, or in which they had no interest, or by an unprecedented downpour of rain precipitating into Cannon's branch a flood of water not reasonably to have been anticipated.

Even if it were conceded that it was proper to instruct the jury in this case that plaintiffs in error were liable for injury resulting from "extraordinary flows of water" in Cannon's branch, still their liability would depend upon what caused the "extraordinary flows." · They might be liable for an injury caused by "extraordinary flows of water" produced by geographic or climatic conditions—that is, "extraordinary flows" produced by natural causes; but surely they would not be liable for an injury caused by "extraordinary flows" resulting from the negligence of third parties, or by unprecedented and extraordinary freshets which no reasonably prudent person could have anticipated, nor experience have foretold. Had instruction No. 1 been qualified, as was intended by instructions "A" and "E," asked for by plaintiffs in error, which were refused, and where the duty of plaintiffs in error was defined to be "to carry off the water of Cannon's branch under ordinary circumstances, including the ordinary rise of said branch at periodically recurring freshets," the jury would have been left free to find, as the evidence tended to prove, that the "extraordinary flows" of June 11, 1903—the principal one that did the damage complained of—was due, not to natural causes, or "extraordinary flows" reasonably to have been anticipated, but to the negligence of the county authorities in allowing water to be so accumulated and ponded at the upper end of a stream tributary to Cannon's branch (by what is known as the "Boulevard" dam), that it caused the brick wall to break, and send

down into Cannon's branch an unprecedented flow of water concurring with the extraordinary fall of rain to cause the injury to defendant in error. If the jury had so found the facts to be, as they reasonably might have done, their verdict would, of course, have been different.

The evidence further strongly tended to prove that the property of the defendant in error was liable to overflow, and did occasionally overflow by reason of high water in Cannon's branch before and after he put up a rock wall to protect his property against these freshets and floods, and before the plaintiffs in error constructed the culverts he now complains of; and it would indeed be a hard rule of law that imposed upon plaintiffs in error the duty of not only providing, in the construction of their culverts, security to the defendant in error against injury caused by water flowing down Cannon's branch on the occasions of these freshets and floods, but by such volumes of water as might be precipitated into the channel of this branch by the downpour of an unprecedented fall of water, or the breaking of a reservoir or dam over which plaintiffs in error had no control, and in which they had no interest, or even by the concurrence of these causes. A rule so plainly unjust and unfair would not only retard enterprise, but would foster obstructions to the utilization, improvement and development of property.

It follows from what has been said that the judgment of the circuit court must be reversed and annulled because of misdirection of the jury, the verdict set aside and the cause remanded for a new trial to be had in accordance with the views expressed in this opinion; therefore, we deem it unnecessary to consider the remaining assignment, which calls for an opinion as to the weight of the evidence certified in the record.

*Reversed.*