FIDLER v. TOWNSHIP OF LAFAYETTE.

1. MUNICIPAL CORPORATIONS — HIGHWAYS — STATUTORY DUTY TO MAINTAIN BARRIERS ON BANK OF WATERCOURSE NOT APPLICABLE TO ARTIFICIAL DITCH. '
    1 Comp. Laws 1915, § 4395 *et seq.*, providing that when any public highway passes along the bank of any lake, river, or other watercourse, and the roadbed is thereby reduced to a width of less than 50 feet, a substantial railing or fence shall be maintained, *held*, not applicable to a highway in which a ditch or other artificial watercourse exists.

On duty of county or town to maintain barriers along rural highways or bridges, see notes in 42 L. R. A. (N. S.) 267; L. R. A. 1915F, 973; L. R. A. 1917D, 756.

2. SAME—DUTY TO RENDER HIGHWAY REASONABLY SAFE.

Although not required by statute, there is a duty to erect and maintain barriers, where necessary, to render a highway reasonably safe and fit for travel.

3. SAME — HIGHWAYS — WHETHER BARRIER NECESSARY QUESTION FOR JURY.

In an action against a township for the negligent death of plaintiff's decedent by drowning when his horse became frightened at water overflowing the highway, and threw him into a deep ditch within the limits of the highway filled with water, whether barriers should have been erected, *held*, a question of fact for the jury.

4. SAME—TRIAL—INSTRUCTIONS.

Although the charge of the court upon the question of barriers was somewhat confusing, *held*, taken as a whole, to have covered the subject.

5. SAME—HIGHWAYS—BARRIERS—NEGLIGENCE—PROXIMATE CAUSE.

If barriers should have been erected and maintained, and the horse was frightened by a condition of the highway existing by reason of defendant's negligence, and had barriers been there they would have prevented the fatality, then such want of barriers was a proximate cause of the accident and not a secondary or remote cause, but if the horse was not frightened by a negligent condition of the highway, then, though barriers would have prevented the fatality, the lack of barriers was not a proximate cause of the accident.

6. SAME—STATE REWARDED HIGHWAYS—LIABILITY OF TOWNSHIP.

It was no defense to show that the State paid a part of improving the highway.

7. SAME — LIABILITY OF TOWNSHIP DEPENDENT UPON NEGLIGENT ACT.

The mere fact that water was over the highway would not make defendant liable, unless it had by some act caused the water to flood the highway.

8. SAME — BRIDGES — DUTY OF TOWNSHIP TO ERECT SUFFICIENT BRIDGE SAME OVER NATURAL AS ARTIFICIAL WATERCOURSE.

The duty of defendant to avoid impeding the passage of water by its bridge was the same whether the bridge crossed a natural or artificial watercourse.

9. SAME — NEGLIGENCE — SPRING FRESHETS NOT EXTRAORDINARY — NOTICE.

> Spring freshets are not extraordinary, and the mere fact that on the occasion in question the water was somewhat higher than usual would not excuse defendant from liability, where it appears that for years, with one exception, the highway was flooded, since defendant is bound to take notice whether its bridge, as constructed, acted as a dam and caused the water to overflow the highway.

10. SAME — WHAT CONSTITUTES EXTRAORDINARY FLOOD QUESTION OF FACT.

> What constitutes an extraordinary flood is a question of fact for the jury, and such issue is to be determined by evidence relating to the flood in question and to previous floods, and the effect of previous floods on the highway, and consideration should be given to the area drained, the ditches, the lay of the land above and immediately below the bridge, and all else tending to show whether the flood was one the township officers should have reasonably anticipated would flow over the highway if the bridge throat was not enlarged.

11. SAME — TRIAL — INSTRUCTIONS — NEGLIGENCE.

> An instruction to the jury which made the test of defendant's negligence depend upon the condition of the road the day before the accident, and held defendant not liable for the condition at the time of the accident, *held*, reversible error.

12. SAME — HIGHWAYS — BRIDGES — DEFECT — NOTICE.

> If water ran over the road in previous years, requiring repairs by defendant, then it had actual notice of the cause if occasioned by the smallness of the bridge throat.

Error to Gratiot; Moinet (Edward J.), J. Submitted January 17, 1924. (Docket No. 77.) Decided April 10, 1924.

Case by Mahlon Fidler, administrator of the estate of Gaylon Fidler, deceased, against the township of Lafayette for the negligent killing of plaintiff's decedent. Judgment for defendant. Plaintiff brings error. Reversed.

*John T. Mathews,* for appellant.

*O. L. Smith* and *Searl & Searl,* for appellee.

WIEST, J.    This is an action to recover damages under the death act.    Sunday afternoon, March 16, 1919, Gaylon Fidler, with two of his small boys, was driving with horse and buggy over a north and south highway in defendant township.    He reached a place where water was flowing across the road from the west side, making a gurgling sound, forming bubbles and foam and falling noisily a foot or more to water on the east side.    He drove into the water and had gone but a rod or two, to where the water was 8 or 12 inches deep, when his horse became frightened and turned across the road facing the east side where a county drain came up to the wrought part of the road with water therein about 9 feet deep.    He struck the horse with the whip, the horse plunged into the deep water and Mr. Fidler and his two boys were drowned. The suit is bottomed on the following negligence of defendant:

(1) Construction of a highway bridge over Beaver creek about 490 feet from the place of the accident with insufficient water way resulting in damming the water and causing it to flow over the highway;

(2) Failure to erect barriers as required by statute where the traveled part of the highway runs along the bank of a natural watercourse;

(3) Duty to erect barriers to render the highway reasonably safe and fit for travel and failure to do so.

Upon the trial defendant had verdict and judgment and plaintiff prosecutes review by writ of error. Many errors are alleged upon rulings admitting and excluding evidence.    They have been examined and present no error resulting in a miscarriage of justice.

Defendant claimed that an extraordinary freshet occasioned the flow of water over the highway; that

Beaver creek was made into a county drain many years ago; that the bridge throat was as wide as the top of the drain; that the highway was State rewarded and at the place of the accident the roadbed was 24 feet wide; that Beaver creek drain was constructed in the highway at the point of the accident and was a ditch and not a watercourse and that Mr. Fidler was guilty of contributory negligence.

Beaver creek in its natural state was evidently a rambling flow of water, leisurely seeking lower levels. In course of time, and the clearing of the land, it became necessary, in establishing a system of drainage, to straighten, widen and deepen the creek and make it a county drain. This was done. The drain crosses the highway at the same point as the old creek bed and then makes a sharp turn to the north alongside of the roadbed. When the drain was put through, the highway bridge had an opening 30 feet wide and no change was made in it.

Mr. Fidler's horse plunged into the drain 490 feet north of the bridge and defendant claims Beaver creek was not within the highway limits at that point until straightened and brought there in constructing the drain. The accident occurred on Sunday, and the day before there was snow on the ground. A heavy rainfall came Saturday night and Sunday morning causing a freshet with water somewhat higher than ever before.

The circuit judge ruled out the count in the declaration planting right of action on a violation of 1 Comp. Laws 1915, § 4395 *et seq.* This statute provides:

"When any public highway which passes along the bank of any lake, river, or other watercourse, * * * shall, by the falling or washing away of the bank, or from any other cause become reduced to a width of less than fifty feet, it shall be the duty of the commissioner * * *," to "forthwith lay out, open and erect such highway in and upon the adjacent land

to the width of fifty feet;  *  *  *" or "erect near the edge of the bank, and thereafter maintain in good order a substantial railing or fence."  *  *  *

The drain was within the limits of the highway and was 15 feet wide at the bottom, 30 feet at the top and 8 feet deep.  The evidence did not show a material reduction in the width of the wrought portion of the highway by a falling or washing away of the bank. Beaver creek, the natural watercourse, became Beaver creek drain, an artificial watercourse, when laid out and improved for drainage purposes.  The statute quoted does not apply to a highway in which a ditch or other artificial watercourse exists.  *De Lapp* v. *Beckwith*, 114 Mich. 394.  The count on the statute was properly excluded.  But, outside of the statute, there is the duty to erect and maintain barriers, where necessary, to render a highway reasonably safe and fit for travel.

In the case at bar whether barriers should have been erected involved issues of fact to be determined by the jury.  We have examined the charge and find the issues upon this question submitted.  While the charge is somewhat confusing upon the question of barriers, yet, taken as a whole, it must be said to have covered the subject.  If barriers should have been erected and maintained, and the horse was frightened by a condition of the highway existing by reason of defendant's negligence, and had barriers been there they would have prevented the fatality, then such want of barriers was a proximate cause of the accident and not a secondary or remote cause.  If, however, the horse was not frightened by a negligent condition of the highway, then, though barriers would have prevented the fatality, the lack of barriers was not a proximate cause of the accident.  *Bell* v. *Village of Wayne*, 123 Mich. 386 (48 L. R. A. 644, 81 Am. St. Rep. 204).  It was no defense to show the State paid a part of the expense of improving the highway.

While evidence was introduced to show the highway was a State reward road yet that question was not submitted to the jury.    The mere fact that water was over the highway would not make defendant liable. Highways may, at times of freshets, be flooded and dangerous to travel but liability for such condition does not attach unless the municipality having charge has, by some act, caused the water to flood the highway.    Plaintiff's right to recover damages depended upon establishing the negligence of defendant in maintaining a bridge with throat too small to permit the water to pass, resulting in flooding the highway and creating a condition calculated to frighten a horse of ordinary gentleness; that such condition existed and, in fact, did frighten Mr. Fidler's horse, and that Mr. Fidler did not contribute toward the accident by his own want of care.    The duty of defendant to avoid impeding the passage of water by its bridge was the same whether the bridge crossed a natural or artificial watercourse.

The duty of a municipality in constructing and maintaining highway bridges has been repeatedly declared in actions brought for flooding lands, and such decisions are applicable here.

"Where bridges, culverts, etc., are constructed across watercourses, by railroad companies, municipalities, or other corporations, or by individuals, due care must be taken not to obstruct the natural flow, including that at seasons of either low or usual high water, and the failure to do so will render the offender liable for injuries to landowners caused by the penning back of the waters and the overflow of their lands; but such structures need not be constructed in such a manner as to permit the unobstructed flow of the watercourse in times of unprecedented or extraordinary freshets."    30 Am. & Eng. Enc. Law (2d Ed.), p. 375.

See, also, *American Locomotive Co.* v. *Hoffman,* 105

Va. 343 (54 S..E. 25, 6 L. R. A. [N. S.] 252, 8 Ann. Cas. 773).

In *Jones* v. *Railway Co.*, 67 S. C. 181 (45 S. E. 188), the court said:

"The rule is that whoever proposes to build a bridge over a stream, before placing his piers or other erection tending in any degree to dam the water or divert it from its natural flow, must study the country through which it flows, its usual freshets, and occasional great floods, which are not usual but which experience teaches may occur at any time, and use reasonable care and skill to avoid producing or increasing damage from these sources. He is not required to anticipate and use precautions against extraordinary or unprecedented floods."

Defendant claims the freshet was extraordinary and unprecedented. The water was higher than ever before and the flood, therefore, may be said to have been unprecedented, but it also appears that for years, with one exception, the spring freshets flowed across the highway, and we must hold that such fact governs rather than mere height of water at the time of the accident. Spring freshets in such case are not extraordinary floods, excusing reasonable care in providing facilities for their passage, even though water rises higher in the last flood than ever before. Each spring freshet made its mark, demonstrated its spread and flow and of this the township authorities were bound to take notice and observe whether the bridge, as constructed, acted as a dam and caused the water to overflow the highway.

In *City of Evansville* v. *Decker*, 84 Ind. 325 (43 Am. Rep. 86), it was stated:

"Against extraordinary and unprecedented freshets municipal corporations are not bound to provide, but they are bound to make provision for such as may be reasonably expected to occur, even though their occurrence be at irregular and wide intervals of time. Ordinary diligence requires that the corporate officers

should take into consideration the past history of the watercourses, and make reasonable provision for freshets of a similar character to those which have previously occurred, and which were not of an extraordinary character."

With water flowing over this highway at the time of each annual period of high water, with one exception, it was the duty of the township officials to note whether such flooding was occasioned by the township bridge acting as a dam. While it is true that bridges are not required to be so constructed as to permit the passage of water on extraordinary and unprecedented occasions yet the township officers are bound to consider the ordinary action of the elements and to include in such ordinary action consideration of water in its high and low stages. What constitutes an extraordinary flood is a question of fact for the jury. Such issue is to be determined by evidence relating to the flood in question and to previous floods, and the effect of previous floods on the highway, and consideration should be given to the area drained, the ditches, the lay of the land above and immediately below the bridge and all else tending to show whether the flood was one the township officers should have reasonably anticipated would flow over the highway if the bridge throat was not enlarged.

The circuit judge instructed the jury:

"I charge you as requested that if you find from all the evidence and the rules laid down in this charge that this roadway at the point where the accident happened, was in reasonable repair and reasonably safe and fit for public travel immediately before the water overflowed it on the night of March 15, 1919, the defendant cannot be charged with negligence because it had not before that time taken steps to prevent the water from overflowing the road in times of such freshets as the evidence shows the one in question to have been."

This instruction, standing alone (and it did so stand

by subsequent instruction), swept plaintiff out of court, for it made the test of defendant's negligence depend upon the condition of the road the day before the accident and held defendant not liable for the condition at the time of the accident. This part of the charge caused the jury, after deliberating for some time, to return into court and put the following question:

"Your honor, in your charge, did you charge us that if the road was in good reasonable passable condition on the day before the accident that we should bring in no cause of action? Some of us understood that that was the case and there was others that didn't understand it that way."

Thereupon the court repeated the above quoted instruction and said:

"That was upon the theory as to whether or not the officers of the township acting as reasonably careful men in the exercise of their duties as officers, ought to have reasonably anticipated that a condition as claimed by the plaintiff would have occurred. Is that what you had reference to?
"*Foreman:* Yes."

The issues related to the condition of the highway at the time of the accident and whether such condition was caused by the negligence of defendant in maintaining a bridge throat which obstructed the passage of water and dammed it up until it ran over the highway. Plaintiff's case narrows to the question of the negligence of the township in maintaining a bridge throat damming water to the extent of sending it across the highway, and causing a condition calculated to frighten an ordinary gentle horse; that the horse was an ordinary gentle one, was in fact frightened by such negligence of defendant, and Mr. Fidler was not guilty of contributory negligence. If water ran over the road in previous years, requiring

repairs by the township, then defendant had actual notice of the cause if occasioned by the bridge throat.

The judgment is reversed and a new trial granted, with costs to plaintiff.

CLARK, C. J., and BIRD, SHARPE, MOORE, STEERE, and FELLOWS, JJ., concurred.    MCDONALD, J., did not sit.