### WHITE *v.* COUNTY OF LIVINGSTON.

1. MUNICIPAL CORPORATIONS—HIGHWAYS AND STREETS—TRIAL—INSTRUCTIONS—APPEAL AND ERROR—LIABILITY OF COUNTY FOR DEFECTIVE STATE HIGHWAY.

   In an action against a county for the death of plaintiff's decedent, alleged to have been caused by a defective public highway, in view of the fact that the trial court twice specifically instructed the jury that the duty was imposed upon the county to keep and maintain the road

On duty of county or town to maintain guard rails and barriers along rural highways or bridges, see notes in 42 L. R. A. (N. S.) 267; L. R. A. 1916F, 973.

On absence of guards along highway as defects for which township is liable, see note in 13 L. R. A. (N. S.) 1247.

in a condition reasonably safe and fit for public travel, it cannot be said that there was reversible error in the admission, or in the omission to strike out, testimony admitted over plaintiff's objection that the road in question was at the time a trunk line highway, that it had been taken over as a county road by the county board of road commissioners of defendant county and that at the time of the accident it was being rebuilt and improved by the State highway department.[1]

2. SAME—NECESSITY FOR GUARD RAILS QUESTION FOR JURY.

Where the proofs show that the traveled portion of the highway was 24 feet in width, that the middle of the road was reasonably safe for travel, and that the slope of the embankment at the place of the accident was from 6 to 8 feet, the necessity for guard rails or danger signals, *held*, a question of fact for the jury.[2]

3. SAME—ADMISSIONS—CONTRACT REQUIRING ERECTION OF GUARD RAILS NOT AN ADMISSION THAT HIGHWAY WAS NOT REASONABLY SAFE WITHOUT THEM.

An instruction by the trial court that the fact that the road construction contract required the placing of guard rails on the sides of the embankment at the place of the accident, and that they were later so placed, should not be considered by the jury as an admission on the part of defendant that the highway was not reasonably safe for travel without them, *held*, not erroneous, since, if the highway was in fact reasonably safe without them, the fact that they were later placed there would not render the county liable.[3]

4. SAME—NEW TRIAL—GREAT WEIGHT OF EVIDENCE.

Under the proofs, the denial of plaintiff's motion for a new trial on the ground that the verdict for defendant was against the great weight of the evidence, *held*, properly denied.[4]

Error to Livingston; Collins (Joseph H.), J.    Submitted October 8, 1924.    (Docket No. 34.)    Decided December 10, 1924.

Case by Fred G. White, administrator of the estate of Myron L. Carr, deceased, against the county of

---

[1]Appeal and Error, 4 C. J. § 2974; [2]Highways, 29 C. J. § 486; [3]Id., 29 C. J. § 487; [4]New Trial, 29 Cyc. p. 822.

Livingston and the township of Green Oak for the negligent killing of plaintiff's decedent.    Judgment for defendant.    Plaintiff brings error.    Affirmed.

*Benjamin, Betzoldt & Bassett* (*Louis E. Howlett,* of counsel), for appellant.

*Glenn C. Yelland* (*Francis J. Shields* and *Charles F. Hemans,* of counsel), for appellee.

SHARPE, J.    Plaintiff's decedent, Myron L. Carr, and Stonehill R. Keates started from Lansing to drive to Detroit in a Winton touring car on the night of August 14, 1921.    When near the village of Island Lake, in Green Oak township in defendant county, the automobile ran off the embankment of the highway and Mr. Carr sustained injuries which caused his death on the following day.    Claiming that the highway was not "in reasonable repair, and in a condition reasonably safe and fit for travel," plaintiff brought this action to recover the damages sustained by the estate by reason of the death of Mr. Carr. After the proofs were closed, the trial court directed a verdict in favor of the township.    Of this no complaint is made.    The liability of the county was submitted to the jury resulting in a verdict of no cause for action, on which, after denial of a motion for a new trial, judgment was entered.    The errors assigned and relied on, for a reversal, relate to the admission of evidence, the charge of the court, and the denial of the motion for a new trial.

1. Attached to their plea, the defendants gave notice that they would prove that—

"the Grand River road, the highway along which plaintiff's intestate was traveling, was under the control and supervision of the State highway commissioner of the State of Michigan, it being a State trunk line road and officially designated as Trunk Line No. 16; that by reason of the foregoing and of the statutes

governing the care, control, maintenance and repairs of highways in this State, the said defendants cannot be held responsible for any defects existing in the said highway."

Over plaintiff's objection, defendant was permitted to prove that the road on which the accident occurred was at that time a trunk line highway (Act No. 210, Pub. Acts 1921, Div. 9 [Comp. Laws Supp. 1922, § 4852]), designated as M 16; that it had been taken over as a county road by the county board of road commissioners of Livingston county on August 4, 1919; and that at the time of the accident it was being rebuilt and improved by the State highway department. This evidence was not stricken out nor was any motion made to strike it out. The trial court, however, in submitting the case to the jury, instructed them that the duty was imposed by law on the county to keep and maintain the road in a condition reasonably safe and fit for public travel. In view of the specific instruction, twice very plainly stated, that the county was liable if the road was out of repair, there was no reversible error in the admission of this testimony or in the omission to strike it out. The defense was made in good faith, and counsel were entitled to submit the proof bearing on it to the consideration of the court. It may be noted that the case was tried before the opinion in *Longstreet* v. *County of Mecosta,* 228 Mich. 542, was handed down.

2. Plaintiff requested an instruction in effect that reasonable care in the maintenance of the highway required that a fence or guard rail should have been placed at the edge of the embankment or that "danger signals or lights" should have been displayed to warn travelers of the dangerous condition of the road. It appears that a fill of from 6 to 8 feet had been made at that place. The width of the traveled portion of the road as constructed was 24 feet. The trial court charged the jury:

'Now, there has been some testimony given in re-
lation to, and one of the charges of negligence in the
declaration of plaintiff, is lack of guard rails at the
side of the road.    That is a question for you to con-
sider in this matter, and I will state to you in relation
to that, that you will first consider and determine the
question whether this portion of the highway where
the accident occurred was in a condition reasonably
safe and fit for public travel, and in this case, that
question depends somewhat upon your solution of
another question, that is, whether or not suitable rail-
ings or barriers along the side of the road there were
necessary to render the highway reasonably safe and
fit for public travel.    So it is for you to say, from all
the facts and circumstances in the case, whether the
absence of a railing at the side of the road there
affected the condition of the road, so that it was not
reasonably safe and fit for public travel.    I charge
you there was no duty of the county road commis-
sioners that requires it to guard the road with a
railing unless you should find that barriers or such a
railing was necessary to render the highway in a con-
dition reasonably safe and convenient for public travel.
And as to whether a barrier was necessary or not,
you are to determine from all the facts as shown by
the evidence and from proper inferences that you may
draw from such facts so proven.''

As before stated, the proofs show that the traveled
portion of the highway was 24 feet in width and the
slope of the embankment was from 6 to 8 feet.    While
the gravel on the sides was loose, there was proof
that the middle of the road was pretty well beaten
down and formed a reasonably safe place for travel.
The necessity for guard rails or danger signals was
clearly a question for the jury.    In two recent cases
it was so held.    *Fidler* v. *Township of Lafayette,* 226
Mich. 635; *Mazzolini* v. *County of Kalamazoo,* 228
Mich. 59.    In the *Fidler Case,* the roadbed was 24
feet in width and the slope of the embankment to the
bottom of the ditch was about 9 feet.    In the
*Mazzolini Case,* the roadbed was from 22 to 24 feet
wide and the fill from 4½ to 9 feet in height.

3. The construction contract required the placing of guard rails on the sides of the embankment, and it appears that they were thereafter so placed. Error is assigned on the instruction by the court that the jury should not consider such proof as an admission on the part of the defendant that the highway was not reasonably safe for travel by reason of such guard rails not having been so placed at the time of the accident. We cannot so hold. The action of the State highway department in providing for such guard rails in the construction contract, and the fact that they were thereafter placed pursuant thereto, cannot render the county liable if such guard rails were not, in fact, necessary to render the highway reasonably safe and fit for public travel and, as before stated, this question was properly and fairly submitted to the jury.

4. Error is assigned on the denial of plaintiff's motion for a new trial, wherein it was alleged that the verdict was against the great weight of the evidence. We cannot so conclude. Under the proofs, the jury may well have found that the highway was in a condition reasonably safe and fit for public travel. The question of the contributory negligence of plaintiff's decedent was also submitted to the jury. There was proof, and it seems to have been quite convincing, that the automobile left the beaten wheel tracks on the roadbed a distance of from 60 to 100 feet from the place of the accident, where there was a slight curve in the fill, and continued on its course, getting closer and closer to the embankment until it finally went over the side.

We find no reversible error in the record, and the judgment is affirmed.

CLARK, C. J., and McDONALD, BIRD, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.