Fred H. RODER and Elsie Roder, Plaintiffs and Appellants,

v.

George KROM, John Krom, and Ralph Krom, doing business as Krom Brothers, Defendants and Respondents.

No. 8374.

Supreme Court of North Dakota.

May 10, 1967.

————◆————

Duffy & Haugland, Devils Lake, for plaintiffs and appellants.

Price & LaQua, Langdon, for defendants and respondents.

TEIGEN, Chief Justice.

This is an appeal from a judgment in an action involving the drainage of surface waters. The judgment dismisses plaintiffs' action and the defendants' counterclaim. The case was tried to the court without a jury and a trial de novo has been demanded.

Plaintiffs own the West Half of Section 14, and the North Half of the Northeast Quarter of Section 15. At the southwest corner of this land is a section corner common to it and the northeast corner of Section 22, which is owned by the defendants. Surface waters in the area drain generally from north to south. A road grade was constructed in the 1930's, running from east to west along the south section line of the plaintiffs' Southwest Quarter of Section 14, which ends at the section corner. In the years before 1949, water from a large slough located on the plaintiffs' Southwest Quarter of Section 14 overflowed near the southwest corner of the section, and flowed westerly a distance of about 40 feet along a natural drainway north of defendants' land. The water following the natural drainway then turned south and ran onto the defendants' Northeast Quarter of Section 22, and flowed southeasterly across that quarter section, eventually reaching Little Park River.

In the year 1949, plaintiffs, under an arrangement with the Soil Conservation Service, re-excavated a drainage ditch upon the Southwest Quarter of Section 14, to improve the drainage on that land. At the same time, with defendants' acquiescence, two culverts were installed at the southwest corner of said Section 14, so located as to extend diagonally from the southwest corner of Section 14 into the northeast corner of Section 22. After the installation of the two culverts at this point, the water, instead of flowing west beyond the section corner before turning south onto defendants' Section 22, flowed onto defendants' land through the culverts at the section corner. Thus what was the natural drainway for surface waters was artificially modified by the installation of the culverts. The township supervisors, who are in charge of the road, installed the two culverts at the section corner. It was done upon recommendation of the Soil Conservation Service, and the agreement of both the plaintiffs and defendants.

The plaintiffs in this action are seeking an injunction against the defendants to permanently enjoin them from obstructing the flow of water in the drainway that has been formed by the discharge of waters through the culverts on Section 22. The defendants admit that in 1963 they placed rocks in this artificial drainway at a point about 30 feet distant from the discharge end of the two culverts. It is the contention of the defendants that because of the velocity of the waters being discharged from the culverts, a washout began in the spring of 1963. This washout was from two and one-half to three feet deep, approximately fifteen to twenty feet long, and eight to ten feet wide. The rocks were placed into it to prevent further washout of the defendants' land. The defendants contend, however, that the rocks which were placed in the washout do not extend above the level with the ground in the surrounding area, and do not impede the natural flow of the water. Thus the sole factual issue in this action is whether or not the

rocks placed into the washout constitute an obstruction to the flow of waters so as to impede the natural flow of surface waters from the drainage area above as it existed in a state of nature. The plaintiffs seek injunction on the ground that the defendants have breached a duty by obstructing the new drainway, which has been substituted by agreement for a natural drainway, to provide for the natural passage of water which may be reasonably anticipated from the drainage area.

In Henderson v. Hines, 48 N.D. 152, 183 N.W. 531, this Court decided that the rights of both upper and lower landowners are fully protected under the rule of law that permits the landowner to use and enjoy his land and dispose of hostile surface waters thereupon subject to the application of the principle *sic utere tuo ut alienum non laedas*. The meaning of that Latin phrase was defined in Lemer v. Koble, N.D., 86 N.W.2d 44, as "So use your own property as not to injure the rights of another." In a situation where the upper and lower proprietors of land have by agreement established an artificial drainway for surface waters to take the place of the natural drainway, we hold the rule is also applicable, and the lower landowner over whose land such artificial drainway exists has no legal ground of complaint to the reception of surface water in such drainway from the tributary watershed as it was accustomed to come in the state of nature. For this reason, the test to be applied is whether or not the placement of rocks in the washout area built up the bottom of the washout to a point where it impeded the flow of surface water to a greater extent than allowed had the natural drainway been permitted to continue in existence.

In Johnson v. City of Winston-Salem, 239 N.C. 697, 81 S.E.2d 153, 44 A.L.R.2d 949, the North Carolina court applied the rule to the upper landowner where it had closed the natural drainway and installed in lieu thereof an underground conduit. The court said:

We see no reason why the general rule which fixes the mutual and reciprocal rights and liabilities of adjoining landowners under the maxim sic utere tuo ut alienum non laedas, requiring that each use and maintain his own land in a reasonable manner as not to injure the property or invade the legal rights of his neighbor, should not apply with all its rigor to a property owner who for the better enjoyment of his property closes an open drainway fixed by nature across his land and installs in lieu thereof an underground conduit. 1 Am.Jur., Adjoining Landowners, Sections 3 and 13; 2 C.J.S. Adjoining Landowners §§ 1, 41, and 44.

See also 81 A.L.R. 262–269; 93 C.J.S. Waters § 114(4); 56 Am.Jur., Waters, Section 76.

Both parties introduced in evidence engineering exhibits in the form of drawings and diagrams of the area. There were also introduced aerial photographs and photographs taken from the ground. The drawings and diagrams show elevations and the general topography of the land. The trial court made a very complete study of the evidence, and set forth in detail in its memorandum opinion an analysis of the respective elevations of the drainway, including the culverts and the rocks placed into the washout. It concluded that the rocks which had been placed into the washout were not shown to have materially or appreciably interfered with the natural drainway over and across this property, and therefore denied plaintiffs relief by way of injunction. The trial court, as a part of its memorandum decision, prepared a profile showing the elevations of the ground 30 feet, 75 feet, and 100 feet south from the outlet ends of the two culverts, which graphically portrays that the bottom or invert end of the lowest culvert is lower by three and two-tenths feet than the lowest ground over which the water coming from the culverts will run after having left the washout. In other words, it appears that the culverts were placed at a lower eleva-

tion than the terrain of the natural drainway over which the waters must flow after leaving the culverts. The trial court reasoned that this results in a collection of water at the discharge ends of the culverts and gives a false impression that an obstruction near the culverts prevents the waters from flowing south, but found the contours established by the engineering studies prove that the rocks which the defendants placed in the drainway do not prevent the flow of surface water in a lesser amount than nature had provided.

We agree with the trial court's analysis of the evidence; however, we find that the plaintiffs have failed to prove the case for still another reason. We conclude, based upon examination of the evidence, that when the culverts were installed, they were installed at a lower elevation than the surrounding area or the drainway as it existed in the state of nature, and one of the culverts slopes one foot from northeast to southwest. Under these circumstances it is natural that a washout will occur at the discharge end of the culverts. The top of the rocks placed into the washout area according to the engineers' study has an elevation of 98.3, and the elevation of the natural drainway at the point where it crosses into the Northeast Quarter of Section 22 is also 98.3. Therefore, the placing of rocks into the washout has not raised the elevation of the artificial drainway above that of the natural drainway which it replaces.

We have carefully reviewed the record in this case and the very thorough memorandum decision of the trial court. We have come to the conclusion that the court made proper findings of fact and drew the proper conclusions therefrom.

The trial court also dismissed the defendants' counterclaim for damages which was based on the contention that the plaintiffs, by artificial drainage, had cast an additional burden upon the defendants' land. The trial court found the defendants failed

to establish damages sufficient to justify an award, and in this we agree.

The judgment is affirmed.

STRUTZ, ERICKSTAD and KNUDSON, JJ., concur.

PAULSON, J., not being a member of the Court at the time of submission of this case, did not participate.