Keith MINTON and Betty Minton, his wife,
Plaintiffs-Appellants,

v.

Ralph STEAKLEY and Vada Steakley, his
wife, Defendants-Respondents.

No. 9019.

Springfield Court of Appeals,
Missouri.

April 5, 1971.

Motion for Rehearing or for Transfer to Su-
preme Court Denied April 23, 1971.

Clarence A. Powell, Powell, Ringer &
Baker, Dexter, for plaintiffs-appellants.

No appearance, for defendants-respond-
ents.

HOGAN, Judge.

Alleging that they had an irrevocable
right to drain their land through a ditch lo-
cated on defendants' land, and that defend-
ants had interfered with that right, plain-
tiffs brought this action for a mandatory
injunction. The trial court denied relief,
and the plaintiffs have appealed.

The land involved lies in the southwest
corner of Stoddard County. It is included
in a large drainage district which, from the
exhibits, appears to drain an area approxi-
mately equal to two Congressional Town-
ships generally south and west into the St.
Francis River. Plaintiffs are the owners
of a 223–acre tract located in the south
half of the district. Defendants own a
half section lying immediately south of
plaintiffs' land. These two tracts are sepa-
rated by a public road which runs east and
west along the half section line. South of

defendants' land is a 320-acre tract owned by Mr. and Mrs. William Artis. The ditch which is the subject of controversy begins a little over a quarter of a mile west of the east boundary line of plaintiffs' property—"more or less in the center of [plaintiffs'] farm"—and runs south across the public road, across the defendants' land and the Artis tract, to the district's lateral ditch which runs generally east and west across the Artis property. This "north and south" ditch—the one in controversy—was described in various ways. Plaintiff Keith Minton stated that it was " * * * probably six to eight foot wide" and "* * * two and a half to three and a half" feet deep. Another witness described it as "a small ditch there, growed up with grass and weeds and stuff." Still another witness described it as "just a field ditch, small ditch." Plaintiffs' evidence was that it drained all but 65 acres of their land.

In support of plaintiffs' contention that they had a drainage easement across defendants' land, plaintiff Keith Minton testified that he had lived in the community for 46 years, and "[t]he north and south ditch [had] been there all [his] life." Mr. Minton's recollection was that the ditch had been worked on by the W.P.A., "whatever year that was." The W.P.A. had "come up through there and dug it by hand," and later had run a dragline through the district's lateral and up the north and south ditch " * * * to help drain the [public] road." In 1958, Mr. Minton had made a "pooling agreement" with the man who then owned the Steakley property, and they shared the expense of cleaning out the ditch down to the district's lateral. Again in 1968, the ditch was cleaned out and inferably made wider and deeper by agreement between Mr. Minton and Mr. Steakley. The defendants had some countervailing evidence, but Mr. Steakley admitted that he had " * * * signed up [for an] A. G. payment [and] paid a hundred dollars out of [his] own pocket" to have the north and south ditch cleaned out in 1968. Without reciting all the evidence in detail, we

can say it is a fair inference that for many years the north and south ditch had been used to drain the Minton property across the lower tracts, and that the lower proprietors and their predecessors in title had knowledge of the use of the ditch for that purpose.

As noted, the plaintiffs' property is separated from that of the defendants by a public road which runs east and west along the south boundary of plaintiffs' tract. The north and south ditch crosses this road. For many years, there was a wooden bridge across the north and south ditch where it crosses the road, but about four years before the trial this bridge was replaced with a 30-inch metal drainpipe. There are road ditches on both sides of the road, described as being "six to eight foot" wide, and both these ditches drain into the north and south ditch. The source of drainage into these road ditches is not entirely clear, but it would appear that most of the water comes from the Minton tract.

The present controversy arose in August 1969, when the defendants put a culvert across the north and south ditch. Plaintiffs' evidence was that, over their objection, defendants had put an 18-inch drainpipe in the north and south ditch, 15 to 20 feet south of the 30-inch drain, and had covered it over with dirt. The plaintiffs also had evidence that the small pipe was placed 15 to 18 inches higher than the large pipe, and as a consequence the defendants' culvert had "half the water flow blocked." Mr. Steakley's testimony was that the north and south ditch "divides my land," and because plaintiffs' waste irrigation water kept the ditch filled or partially filled much of the time, he had no means of crossing the ditch to cultivate his land, and it became "necessary for [him] to do something about it." Mr. Steakley had had five bridges across the north and south ditch, he testified, but "they washed away every year." Finally, Mr. Steakley moved his " * * * field road right up there next to the [public] road," and put the culvert in. He denied that the bottom of

his drainpipe was higher than the large pipe; he had made a special effort, he said, to "level it perfect."

In any case, a heavy rain fell shortly after the Steakley culvert was finished. Plaintiff Keith Minton described it as "quite a large rain," "above average." The amount of rainfall on this occasion is not clearly shown, but counsel for the defendants suggested, and the witnesses seemed to agree, that several inches fell in three or four hours. Mr. Artis testified that following this particular rain the water was "all over" his land, and all over "all of them that didn't have high spots." Artis "had about four or five acres of beans drown out on account of that [particular] water." Mr. Steakley testified that on that occasion he had "at least 80 acres under water," and that on the Artis tract "it was too deep to wade."

Plaintiffs took some pictures—color snapshots—shortly after the rain fell. Plaintiff Keith Minton testified that the pictures were taken after a three-inch rain had fallen, and that he had just finished irrigating 15 acres of land when the rain began to fall. Four of those pictures are material here. Three of them were taken on the public road looking north. They show a planted field, partially flooded. The other picture (Exhibit "J") purports to show the accumulation of water between the public road and the defendants' "field road." This last exhibit indicates that the "field road," a narrow raised gravel strip, or the defendants' culvert, one or the other, backed up a considerable amount of water at the time it was taken. Plaintiff Keith Minton testified that the partially flooded field was his "bean field," but plaintiffs made no effort to show the damage they sustained on this particular occasion. Other facts will be noticed in the course of the opinion.

In resolving the merits of this appeal, some preliminary observations seem appropriate. The nature of the relief sought must be considered. In their petition, the plaintiffs prayed the court (1) to compel defendants to remove their culvert; (2) to enjoin defendants from placing "any dirt, tin culvert or other obstruction in said ditch * * * and from in any manner interfering with the flow of water from the Plaintiffs' land into and through said ditch * * *"; and (3) "for such damages as Plaintiffs may suffer up to the date of trial." Plaintiffs modified their position; during the trial, counsel for plaintiffs advised the court—and that statement is repeated in the brief—that plaintiffs would have no objection to defendants' culvert if defendants would "put in a * * * [drainpipe] the right size." In this court, plaintiffs conclude their printed brief by saying they have no objection to defendants' construction of a bridge or installation of a culvert if the drain is sufficient to carry the water from their land. They suggest that defendants' drainpipe must be at least 30 inches in diameter. Therefore, if we understand plaintiffs correctly, they contend that in the proven circumstances the trial court should have ordered the defendants to remove the drainpipe they have installed and replace it with one 30 or more inches in diameter. In this connection, it must be borne in mind that a mandatory injunction directing the undoing of that which has been done may not be granted on doubtful proof; the mandatory injunction is a harsh remedy, to be granted only when the right thereto is clearly established, the burden of proof being upon the complainant. Grandstaff v. Bland, 166 Mo.App. 41, 46, 148 S.W. 139, 140; 42 Am.Jur.2d Injunctions, § 20, pp. 752–753. The issuance of any injunctive process is a matter resting in the sound discretion of the court. State ex rel. Ellis v. Creech, 364 Mo. 92, 96, 259 S.W.2d 372, 374 [4]; City of Spickardsville v. Terry, Mo.App., 274 S.W.2d 21, 27 [8]. In our view, the trial court did not abuse its discretion in refusing to order the defendants, upon pain of contempt, to remove the drain they had installed and replace it with another, unless plaintiffs' right to that order was established by clear and convincing proof.

Plaintiffs have devoted a considerable part of their brief to development of the point that they have either an irrevocable license or an easement to drain their land through the north and south ditch. In support of this point, they cite such cases as Wilson v. Owen, Mo., 261 S.W.2d 19, Gibson v. Sharp, Mo.App., 277 S.W.2d 672, and Grandstaff v. Bland, supra, 166 Mo. App. 41, 148 S.W. 139, and argue alternatively that § 244.010, RSMo (1969), V.A.M. S., gives them an absolute and substantive right to drain their land into the drainage district's lateral ditch, and since defendants and Artis and their predecessors in title had agreed to the location and use of the north and south ditch, it was unnecessary for plaintiffs to proceed under § 244.020 to acquire a drainage easement.

■ We think we may assume, without deciding, that the plaintiffs had some kind of right to drain their land across that of the defendants through the north and south ditch. It is generally recognized that drainage rights in the nature of prescriptive easements may accrue in artificial channels if they are enjoyed by an upper proprietor for the statutory period of limitation, 6A American Law of Property, § 28.63, p. 190 (1954), and the proof in this case is very similar to that adduced by the plaintiffs in Gibson v. Sharp, supra, 277 S.W.2d 672, wherein this court held that the lower proprietors were without right to dam off a drainage ditch similar to the north and south ditch described in this case. However, the establishment of such a prescriptive right, assuming it is established, does not carry with it the proposition that plaintiffs were entitled to the specific relief they sought. Plaintiffs' rights are not absolute and without limitation. Missouri follows the so-called "common enemy" doctrine with respect to the disposition of surface waters, but in a modified or qualified form. Haferkamp v. City of Rock Hill, Mo., 316 S.W.2d 620, 624–625 [4]. Long ago, in adopting the "common enemy" rule, our Supreme Court qualified that rule by stating that " * * * private persons

may so occupy and improve their land, and use it for such purposes as they may see fit * * * by making any * * * improvement thereon to make it fit for cultivation, or other profitable or desirable enjoyment; and it makes no difference that the effect of such improvement is to change the flow of the surface water accumulating or falling on the surrounding country * * [but the landowner] must improve and use his own lands in a *reasonable* way * *." (Our emphasis.) Abbott v. K. C., St. J. and C. B. Ry., Co., 83 Mo. 271, 282–283. See also McCormick v. Kas. C., St. Jos. & Council Bluffs R. R. Co., 57 Mo. 433, 437– 438. The statute, § 244.010, does not confer rights any broader than those conferred by the general law. Young v. Moore, Mo. App., 236 S.W.2d 740, 744 [3] [5]. As we conceive it, the defendants, as the lower proprietors or the persons in possession of the servient tract, were privileged to construct a bridge or a culvert across the north and south ditch, provided they did not interfere unreasonably with the plaintiffs' drainage rights. From the general principles stated, we consider that it was plaintiffs' burden to show by clear and convincing proof that defendants' culvert so unreasonably interfered with the drainage of their land as to require a mandatory injunction.

■ In our opinion, the plaintiffs failed to establish their right to the relief they sought in two respects. In the first place, they failed to establish that the damage they sustained was due to the size of the defendants' culvert. There was evidence that the ditch, open and unobstructed, was not deep enough to accommodate all the surface water which accumulated after a heavy rain; Mr. Hershel Martin, a neighbor, testified that the ditch filled with water when it rained, but that the water also "run down across the woods when it would rain * * * [t]hat whole country would get covered with water." Mr. Artis testified that "when that ditch [sic] is up that water don't go through that ditch, that water goes out about halfway to Steakley's

field and comes across mine * * * and I * * * want that to be clear." One of the photographs received in evidence makes it appear that it may have been the "field road" which acted as a dam or levee and backed the water up on plaintiffs' land. The plaintiffs' easement or drainage right did not give them the right to use all of the defendants' land as a drainway; defendants were not privileged to dam up the ditch, but plaintiffs had no complaint if it was the "field road" which obstructed or impeded the flow of surface water from their land onto that of defendants. Gibson v. Sharp, supra, 277 S.W.2d at 677 [1]; Mehornay v. Foster, 132 Mo.App. 229, 231–232, 111 S.W. 882, 883 [2]; Anno., 12 A.L.R.2d 1338, § 2, p. 1342 (1950).

Plaintiffs' proof is deficient in another respect, in view of the relief sought. As stated, the real substance of plaintiffs' position is that the drainpipe in defendants' culvert is too small, and defendants should therefore be required to remove and replace it. Plaintiffs made no effort to recover money damages. As we have stated and plaintiffs concede, the defendants are privileged, in the circumstances, to construct and maintain a culvert of *some* kind across the north and south ditch. If the defendants were to be required to remove the drainpipe from the culvert and replace it, it seems to us it was incumbent upon the plaintiffs to show the kind or size of drainpipe which would adequately protect their rights. Otherwise, the court might require the performance of an expensive act which would restrain the defendants' lawful use of their property without being effective to relieve the plaintiffs' complaints. In this case, as in all cases involving injunctive relief, the difficulties inherent in framing and enforcing an effective order are factors to be considered. 42 Am.Jur.2d Injunctions, § 37, p. 776.

Plaintiffs have cited us no authority measuring the duty of a lower or servient landholder who builds a structure—a bridge or a culvert—across an artificial channel in order to improve his land. The general rule applied to natural watercourses is that the lower landholder must provide for the passage of such volume of water as may reasonably be anticipated to drain through the natural watercourse, 56 Am.Jur. Waters, § 75, pp. 562–563, and such sparse recent authority as we find indicates that the same rule applies to artificial channels or drainways. Weinberg v. Northern Alaska Development Corp., Alaska, 384 P.2d 450, 452 [3]; Roder v. Krom, N.D., 150 N.W.2d 708, 710 [1–3]. Plaintiffs here have heavily emphasized that the drain in the public road is 30 inches in diameter, and they argue that therefore the defendants' drainpipe must be at least 30 inches in diameter or more. We have searched the record in vain, however, for evidence that a 30-inch drainpipe—or any other size—was necessary to accommodate the flow which could ordinarily be anticipated in the north and south ditch. The defendants were not required to anticipate and provide for an extraordinary and unprecedented volume of water, Cooney v. Pryor, Mo.App., 203 S.W. 630 [3]; Fidler v. Lafayette Tp., 226 Mich. 635, 198 N.W. 262, 264; American Locomotive Co. v. Hoffman, 105 Va. 343, 54 S.E. 25, 27–28, 6 L.R.A.,N.S., 252, 256, and while the "heavy rain" described in the evidence certainly does not qualify as vis major or an "Act of God," the plaintiffs limited their proof to one occasion when several inches of rain fell in a short time. Moreover, the plaintiffs had inferably increased the volume of water in the north and south ditch appreciably by irrigating 15 acres of their land immediately before the rain began to fall. Plaintiff Keith Minton testified only that the rainfall in question was " * * * a pretty large rain at one time," and that heavier rains occasionally fell. In short, as we view the record, we are left without convincing proof of the volume of flow which could constitute a "ditch full" of water under the weather conditions reasonably to be anticipated, and without proof of

the size drainpipe which would accommodate that flow.

We do not say that a contrary result might not have been reached, but the granting or refusal of injunctive relief rests in the sound discretion of the trial chancellor, and we review his action only to determine whether or not there has been an abuse of that discretion. White v. Boyne, 224 Mo.App. 597, 599, 30 S.W.2d 791, 792 [3]; 42 Am.Jur.2d Injunctions, § 353, pp. 1162–1163. We find no such abuse of discretion here, and the judgment is therefore affirmed.

TITUS, P. J., and STONE, J., concur.